**In re COAST TRADING COMPANY, INC., Debtor.**

**COLLINGWOOD GRAIN, INC., Plaintiff,**

v.

**COAST TRADING COMPANY, INC.; Bank of Nova Scotia; Oregon Bank; Cache National Bank; Pinal Feeding; Bogle Farms, Inc.; and Hughes & Ganz Cattle Company, Inc., Defendants.**

Bankruptcy No. 382–00974.
Adv. No. 82–0517.

United States Bankruptcy Court,
D. Oregon.

June 16, 1983.

**678**

Laura J. Walker, Portland, Or., for plaintiff.

John Weil, Portland, Or., for debtor.

Kevin D. Padrick, Portland, Or., for Bank of Nova Scotia.

Howard Levine, Portland, Or., for Oregon Bank.

Leon Simson, Portland, Or., for trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

FOLGER JOHNSON, Bankruptcy Judge.

Plaintiff, pursuant to two contracts with Coast Trading Company, Inc., (Coast), sold eight carloads of grain to Coast who immediately resold it to Pinal Feeding, Bogle Farms and Scottsdale Feedyard and had plaintiff deliver it directly to such purchasers in accordance with frequent practice in the grain trade. Five cars were delivered before Coast filed its Chapter 11 in the Bankruptcy Court on April 7, 1982. Two cars arrived on April 8. One of these is not involved in this proceeding as Collingwood Grain, Inc. (Collingwood) received payment for it from Pinal Feeding (Car SSW 77487). The eighth car was not delivered until April 15. All deliveries were F.O.B. destination.

The three ultimate buyers, not knowing who was entitled to the money for the grain, have paid such money into Court and they have been dismissed as parties to the proceeding.

The Oregon Bank has decided to assert no claim on its own behalf in this proceeding but The Bank of Nova Scotia is stepping into the shoes of The Oregon Bank by virtue of the subordinate security interest allowed it by the Court in the Chapter 11 on the same assets securing the operating loan of The Oregon Bank, so that the debtor could continue to use the cash collateral claimed by both banks. The Cache National Bank is also making no claim to the money as its security interest covers only assets in Colorado and this was a sale to Coast by a Kansas firm for delivery in Arizona.

The question to be resolved, therefore, is whether Coast, The Bank of Nova Scotia, or Collingwood is entitled to the money held by the Clerk of the Bankruptcy Court. Hughes & Ganz Cattle Company also paid

in $22,232.75 but this was claimed by Coast only.

The sales by Collingwood were represented by two contracts with Coast—Nos. 1310 and 1397—entered into before the Chapter 11 was filed on April 7, 1982. Coast also entered into contracts with the three Arizona purchasers before such date and all carloads were shipped by Collingwood except that Car SSW 77563 was shipped to Bogle Farms on April 7 rather than before, "F.O.B. Dest. Elev." and was spotted on Bogle's siding on April 8 at 1:10 p.m. Pacific Standard Time. Later that same day, Collingwood made written demand upon Coast to reclaim the grain as Coast's drafts in payment for the grain had been dishonored by the bank because of the filing of the Chapter 11. Thus, only one car reached its destination after receipt of the reclamation demand by Coast (Car SSW 77602) which car was not spotted on Pinal's siding until April 15. In the meantime, Collingwood had advised Pinal it was reclaiming the grain and had stopped the car in transit, later permitting it to proceed with the understanding the sale was now being made to Pinal by Collingwood rather than by Coast. The agreed value of such car in the pretrial order is $11,190.39.

■ The Court finds that Pinal Feeding, Bogle Farms and Scottsdale Feedyard were good faith purchasers for value in the ordinary course of business within the meaning of § 2–403 and § 2–702 of the Uniform Commercial Code, and where delivery had been made before reclamation, Collingwood had lost any right to reclaim the grain or the proceeds thereof. This Court has already decided such question in *Kerr Pacific Milling Corp. v. Coast Trading Company, et al.,* 31 B.R. 663 (Bkrtcy.D.Or.1982) and in *Cliff Dopps v. Coast Trading Company, et al.,* 31 B.R. 667 (Bkrtcy.D.Or.1982).

Plaintiff asserted that Bogle was not a good faith purchaser as it knew Collingwood was reclaiming the grain. The evidence only shows that a representative of Collingwood made a telephone call to Bogle sometime between noon and 2:00 p.m. Pacific Standard Time, on April 8. Since the car was delivered at 1:10 p.m., plaintiff has failed to sustain its burden of proving that notification preceded delivery. It is, therefore, unnecessary for the Court to determine whether an oral notification prior to delivery can prevent the consignee from being a good faith purchaser for value, especially where the written reclamation demand required by the Bankruptcy Code was not made until after delivery.

■ The Court holds that where the reclaiming seller was not entitled to reclaim goods sold because its interest was defeated by a buyer in the ordinary course of business or by a security interest holder, the seller is not entitled to an administrative expense priority. See *McCain Foods, Inc. v. Flagstaff Foodservice Co.,* 14 B.R. 462 (Bkrtcy.S.D.N.Y.1981) and *Dopps v. Coast Trading,* supra. Nor, as held by the Court in *Clayton v. Coast Trading Company,* 31 B.R. 674, No. 82–0422 (Bankr.Crt.D.Ore. June 1983), does the mere happenstance of delivery after the filing of the Chapter 11 under a prepetition contract create a postpetition contract or transaction between the seller and the debtor in possession entitling the former to an administrative priority in the Chapter 11. Nor does failure to pay or the dishonor of a draft prevent Coast from conveying good title to a good faith purchaser for value in the ordinary course of business. *In re Samuels,* 526 F.2d 1238 (5th Cir.1976).

On April 13, Coast sent a letter to Collingwood endeavoring to cancel the contracts which involved the aforesaid deliveries in Arizona. The grain had already been delivered to the consignees designated by Coast and represented by separate resale contracts between Coast and said consignees. Coast had attempted to pay for the grain but the bank had seized the deposits of Coast under a claim of setoff and the drafts were not honored. It was, however, too late for Coast to cancel or reject the contracts. Both such attempted cancellation and the later alleged resale of grain to Collingwood were apparently caused by legal confusion in the Chapter 11 and were meaningless and ineffective.

**680**

Collingwood argues that The Bank of Nova Scotia should not be treated as a "good faith purchaser" whose rights come ahead of a reclaiming seller because the bank's security interest is not perfected. The Court holds that perfection is not necessary in order to become a good faith purchaser. In *Guy Martin Buick, Inc. v. Colorado Springs National Bank*, 519 P.2d 354 (Colo.App.1974), the Court stated that:

"The declared policy of the Colorado Uniform Commercial Code requires that a security agreement shall be effective between the parties and against other parties, except as is specifically provided otherwise in the Code. C.R.S.1963, 155–9–201. The priority provisions of the Code delineate which interests in goods are superior to unperfected security interests. C.R.S.1963, 155–9–301. The right to reclaim goods conveyed as part of a cash sale transaction created by C.R.S.1963, 155–2–507(2), is not one of the interests which is listed as having priority over an unperfected security interest. Therefore, the bank's unperfected security interest, under the facts presented in this case, had priority over Guy Martin Buick's right to reclaim the automobiles."

The security interest of The Bank of Nova Scotia, through The Oregon Bank which held a general lien on all assets and through its own security agreement on accounts receivable, attached upon delivery of the grain before reclamation, but The Bank of Nova Scotia has agreed that any interpleaded funds to which it may be entitled may be paid to Coast.

The Court, therefore, concludes that judgment should be entered for defendants as to all cars except Car SSW 77602 delivered on April 15, and that plaintiff is entitled to $11,190.39 plus a pro rata share of any interest accumulated since Pinal Feeding paid the funds into Court and that defendant, Coast Trading Company, Inc., is entitled to the balance of the interpleaded funds held by the Clerk of the Bankruptcy Court in this adversary proceeding.