In the Matter of CORAL PETROLEUM, INC., Debtor.

TRADAX PETROLEUM AMERICAN, INC., Appellant,

v.

CORAL PETROLEUM, INC., et al., Appellees.

No. 88–2548.

United States Court of Appeals, Fifth Circuit.

July 28, 1989.

Dean W. Ferguson, Gardere & Wynne, Todd R. Moore, Dallas, Tex., for appellant.

Larry D. Knippa, Knippa & Karl, Houston, Tex., and Dorothea W. Regal, Allan L. Gropper, White & Case, New York City, for appellees.

Before REAVLEY, POLITZ and SMITH, Circuit Judges.

REAVLEY, Circuit Judge:

Tradax Petroleum America, Inc., the beneficiary under an irrevocable standby letter of credit, appeals from the district court's judgment in favor of the issuing bank, French American Banking Corp. ("FABC"), denying reformation or construction of the letter of credit. We affirm.

I.

In March 1983, Tradax, an oil trading company, contracted to sell to Coral Petroleum, Inc. 31,000 barrels of West Texas Intermediate crude oil for a price of $880,400. The contract imposed upon Coral the obligation of opening a standby letter of credit "in a form and from a bank acceptable" to Tradax. Coral then entered into a contract with FABC under which FABC agreed to issue an irrevocable standby letter of credit in favor of Tradax in the amount of $880,400. Coral specified the documents Tradax would be required to present to draw under the letter of credit and supplied to FABC the precise language to be used. The required documents were (1) a signed statement by an officer of Tradax Petroleum that the West Texas Intermediate was delivered to Coral, (2) an unsigned copy of the shipper's transfer listing indicating transfer to Coral of 31,000 barrels plus or minus 5 percent of "WTNM SO or SR," and (3) a commercial invoice describing the merchandise as 31,000 barrels plus or minus 5 percent of West Texas Intermediate crude oil. FABC issued the letter of credit exactly as requested.

The parties now recognize that Coral made a mistake in designating the type of oil required in the shipper's transfer listing. "WTNM SO or SR" refers to sour oil, while the oil Tradax was to provide, West Texas Intermediate, is a sweet oil. When FABC sent the letter of credit to Tradax for its approval, however, Tradax failed to catch the mistake. Instead, two Tradax employees reviewed the credit for possible errors and determined that it was acceptable as written. In May 1983, Tradax shipped the oil to Coral.

On June 2, 1983, Coral filed for relief under Chapter 11 of the Bankruptcy Code. Thereafter, when Coral failed to pay for the oil that Tradax had delivered, Tradax attempted to draw on the letter of credit. In comparing the documents called for in the letter of credit to those actually presented, FABC found that the shipper's transfer listing which Tradax submitted showed that it had delivered 31,000 barrels of "DOM SWT" to Coral rather than the "WTNM SO or SR" crude specified in the letter of credit. FABC contacted Coral to determine whether it would waive this discrepancy and authorize FABC to pay in spite of it. Coral refused to waive the discrepancy so FABC refused to pay. The letter of credit expired according to its terms on June 30, 1983.

On July 20, 1983, Tradax commenced this adversary proceeding in the bankruptcy court seeking reformation or construction of the letter of credit. On cross-motions

for summary judgment, the bankruptcy court concluded that Tradax's presentation did not strictly comply with the letter of credit and accordingly dismissed the proceeding as to FABC. The district court affirmed the judgment of the bankruptcy court.[1] Tradax appeals.

## II.

At the outset it is important to note that a letter of credit is not an ordinary contract but instead is a unique device developed to meet the specific needs of the marketplace. *East Girard Sav. Ass'n v. Citizens National Bank & Trust Co.*, 593 F.2d 598, 603 (5th Cir.1979). The special law that has developed concerning letters of credit is embodied generally in Article 5 of the Uniform Commercial Code ("UCC") and the Uniform Customs and Practice for Documentary Credits, International Chamber of Commerce Publication No. 400 (1983) ("Uniform Customs"). "[T]he law of contracts supplements the law of credits only to the extent that contract principles do not interfere with the unique nature of credits." J.F. Dolan, *The Law of Letters of Credit*, ¶ 2.02 at 2–4 (1984).

The UCC defines a letter of credit as "an engagement by a bank ... made at the request of a customer ... that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit." N.Y. U.C.C. 5–103(1)(a) (McKinney 1964). As this definition suggests, a letter of credit transaction ordinarily involves three separate contracts: (1) an underlying contract, usually between a buyer of goods, who applies to a bank for the letter of credit, and a seller of goods, who becomes the beneficiary under the credit; (2) a contract between the issuing bank and its customer to issue the letter of credit, and (3) the letter of credit itself, a contract between the issuing bank

and the beneficiary. *See East Girard Sav. Ass'n*, 593 F.2d at 601. As a general rule, the obligations and duties created by the contract between the issuer and the beneficiary are completely separate and independent from the underlying transaction between the beneficiary and the bank's customer. *Philadelphia Gear Corp. v. Central Bank*, 717 F.2d 230, 235 (5th Cir.1983). The issuing bank has no obligation to pay unless the beneficiary complies precisely with the documentary requirements spelled out on the face of the letter of credit. *Venizelos, S.A. v. Chase Manhattan Bank*, 425 F.2d 461, 464–65 (2nd Cir.1970). An issuing bank that makes payment upon a presentation that does not conform to the requirements of the credit loses its right to repayment from its customer. *Philadelphia Gear*, 717 F.2d at 236.

Letters of credit, therefore, are strictly construed. In determining whether payment is warranted in a particular case, the issuing bank has no obligation to go beyond a facial examination of the tendered documents. *Id.* at 235. While the issuer is required to act in good faith and to observe any general banking usage, it is not charged with knowledge of any usage of the trade in which the beneficiary and customer are involved. N.Y. U.C.C. § 5–109(1)(c) (McKinney 1964) (issuing bank's obligation "does not include liability or responsibility" for "usage of any particular trade"); Uniform Customs (1983 rev.) Arts. 17, 18 ("banks assume no liability or responsibility" for the "description ... of the goods" or for the "interpretation of technical terms"). As the court wrote in *Marino Industries Corp. v. Chase Manhattan Bank, N.A.*, 686 F.2d 112, 115 (2nd Cir.1982), "[t]he bank's sole function [in a letter of credit transaction] is financing; it

---

1. In so doing, the court relied generally on this court's opinion in *Exxon Co. v. Banque de Paris et des Pays–Bas*, 828 F.2d 1121 (5th Cir.1987), vacated, ⸺ U.S. ⸺, 109 S.Ct. 299, 102 L.Ed. 2d 319 (1988). Tradax argues that, because the Supreme Court has since vacated and remanded the *Exxon* decision for reconsideration in light of *Kerr Constr. Co. v. Plains Nat'l Bank*, 753 S.W.2d 181 (Tex.App.—Amarillo 1987, writ de-

nied), we should reverse and remand this case as well. We disagree. The district court cited *Exxon* as authority only for well-settled principles of law. Moreover, even if the result in *Exxon* is changed on remand, it will be on the strength of Texas law. Tradax does not dispute that, to the extent that state law applies in this case, we must look to the law of New York.

is not concerned with or involved in the commercial transaction."

### III.

■ Tradax concedes that the shipper's transfer listing it presented to FABC did not comply strictly with the terms of the letter of credit. It asserts, however, that in order for the doctrine of strict compliance to apply, the letter of credit must be free from ambiguity. In support of its proposition, Tradax cites *Marino Industries*, in which the Second Circuit wrote that "[t]he corollary to the rule of strict compliance is that the requirements in letters of credit must be explicit, ... and that all ambiguities are construed against the bank." *Id.* Here, Tradax claims, the letter of credit contained an internal inconsistency which rendered the document ambiguous; therefore, it should have been construed against FABC.[2]

We do not believe that the terms of the letter of credit at issue in this case are ambiguous. Rather, the requirements are quite explicit; the credit unequivocally calls for presentation of a "transfer listing by shipper ... indicating transfer to Coral of 31,000 barrels plus or minus 5 percent of WTNM SO or SR." There is nothing ambiguous about this requirement; therefore, there is nothing to construe.

The terms of the credit are, however, impossible to perform. Tradax could not possibly present documentation indicating that it delivered West Texas Intermediate (sweet oil) and at the same time present documentation indicating the transfer of "WTNM SO or SR" (sour oil). Tradax argues that the district court should have construed the letter of credit to avoid this impossibility. We note that, while there does not appear to be much case law concerning this issue, at least one commentator in the field of letter of credit law has suggested that impossibility does *not* excuse strict compliance with the terms of a credit:

The strict-compliance rule has the intended salutary effect of requiring the beneficiary to review the credit to be certain that he can comply with it. That inquiry, which permits the beneficiary to verify that the credit complies with the underlying contract, also permits him to make timely requests for amendments and to withhold shipment or other performance if the credit does not comply with the underlying transaction *or is impossible for him to satisfy.* It is more efficient to require the beneficiary to conduct that review of the credit before the fact of performance than after it, and the beneficiary that performs without seeing or examining the credit should pay the piper.

J.F. Dolan, *The Law of Letters of Credit,* ¶ 6.03 at S6–3 to S6–4 (Supp.1989) (emphasis added).

Similarly, a beneficiary who negligently inspects a letter of credit and thereby fails to discover that the requirements are impossible for him to satisfy should be required to "pay the piper" as well. This is especially true in a case such as this one, where the impossibility arises from the use of technical or trade terms and where the bank has performed exactly as requested by its customer. These very facts distinguish the case at bar from the cases upon which Tradax most heavily relies. In *East Girard Sav. Ass'n,* the issuing bank drafted a letter of credit on the wrong form; this caused extraneous language to be included in the credit which in turn created an ambiguity. The court construed the ambiguity against the bank. 593 F.2d at 602. In *Venizelos,* the Second Circuit construed an amended letter of credit against the confirming bank that authored the ambiguous amendment. 425 F.2d at 466. In neither case were technical or trade terms at issue. Here, by contrast, the inconsistent terms clearly were technical terms, provided by Coral and approved by Tradax. As was discussed above, under the general law governing letters of credit, an issuing bank is expressly exempted

---

**2.** The cases upon which Tradax relies to support this claim are neither letter of credit cases nor factually similar to this case. *See, e.g., Nicholas Acoustics & Specialty Co. v. H & M Constr. Co.,* 695 F.2d 839 (5th Cir.1983); *In re Cajun Electric Power Co-op, Inc.,* 791 F.2d 353, 360 (5th Cir. 1986).

from responsibility for knowledge or lack of knowledge of technical or trade terms.

Tradax does not dispute that, ordinarily, an issuing bank need not know the meanings of technical terms used in trade. It contends, however, that under *East Girard Sav. Ass'n,* the bank must know the terms of its own contract with the beneficiary and is required to ensure that the terms of the credit are internally consistent. *East Girard Sav. Ass'n* does not support this contention. There, the court simply wrote that "a bank must use the utmost care in drafting its letters of credit" and that "[b]anks are presumed to be cognizant of prevailing commercial practices in transacting their business." 593 F.2d at 602-03. In this case, there has been no suggestion that FABC acted carelessly in drafting the letter of credit. Instead, the letter of credit precisely incorporates the exact terms that Coral requested. Nor is this a matter involving "prevailing commercial practices" of which FABC should have been aware. If we were to impose liability on FABC in this case for failing to ensure that the trade terms listed in the letter of credit were consistent with one another, we effectively would be circumventing the rule expressly exempting issuing banks from responsibility for trade terms. This we refuse to do.

Tradax also asserts that it is inequitable to make Tradax assume the risk of nonpayment since Tradax tried to shift that risk by requiring Coral to provide a letter of credit. We disagree with this assertion for two main reasons. In the first place, we do not agree that equitable considerations are relevant here. "The right to enforce express terms, without reference to the equities, has long been recognized in letter-of-credit law, and is essential to the proper functioning of the letter-of-credit device." Harfield, *Code, Customs, and Conscience in Letter-of-Credit Law,* 4 U.C.C. L.J. 7, 14 (1971-72). Second, we do not believe that a beneficiary under a letter of credit can shift all of the risk to the issuing bank simply by purporting to enter into a letter of credit transaction. The beneficiary always assumes the risk that it will not be able to collect from the bank if it does not present documents in precise compliance with the letter of credit's requirements. This is the very reason that the beneficiary is given the opportunity to examine and either accept or reject the letter of credit.

In this case, FABC prepared the letter of credit exactly as its customer, Coral, requested. The terms of the letter of credit were explicit. Tradax, after it had a full and fair opportunity to examine the letter of credit, approved it as written. Thereafter, FABC's obligations were controlled solely by the terms of the letter of credit. In attempting to draw on the credit, Tradax failed to present documents which complied precisely with those terms. The district court properly entered judgment in FABC's favor.

## IV.

Tradax also argues that the letter of credit should be reformed to obviate the mutual mistake of the parties. As a general rule, a plaintiff seeking reformation must prove (1) a mutual mistake of fact between the parties which (2) renders the contract unreflective of or contrary to the parties' intent, and (3) the existence of extrinsic evidence, generally in the form of an antecedent writing, which does accurately reflect the parties' intent.

We agree with the district court's determination that there was no mutual mistake here. Any mistake made was made by Tradax and Coral only—not by FABC. FABC, without knowledge of the meanings of the technical designations included, prepared the letter of credit precisely in compliance with Coral's request. Tradax then failed to recognize that the letter of credit's terms did not reflect its agreement with Coral. In addition, there is no prior agreement between FABC and Tradax to which this letter of credit could be conformed. Contrary to Tradax's suggestion, neither FABC's internal summary of the transaction nor the underlying agreement between Tradax and Coral is evidence of a prior agreement between FABC and Tradax.

AFFIRMED.