**In re EAST TEXAS STEEL FACILITIES, INC., n/k/a Lone Star Steel Company, Debtor.**

**BERLINER HANDELS–UND FRANKFURTER BANK, Plaintiff,**

**v.**

**EAST TEXAS STEEL FACILITIES, INC., Defendant.**

**Bankruptcy No. 389–33552–HCA–11. Adv. No. 389–3376.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

July 27, 1990.

236

Michael R. Rochelle, Patrick J. Neligan, Jr., Blake L. Berryman, Weil, Gotshal & Manges, Stephen T. Hutcheson, Cox & Smith, Inc., Dallas, Tex., for debtor/defendant.

Michael W. Anglin, Louis R. Strubeck, Jr., Fulbright & Jaworski, Dallas, Tex., Neal D. Colton, Mark A. Shaiken, Dechert, Price & Rhoads, Philadelphia, Pa., for plaintiff.

Robin E. Phelan, Haynes & Boone, Dallas, Tex., for Unsecured Creditors Committee.

## REVISED MEMORANDUM OPINION

HAROLD C. ABRAMSON, Bankruptcy Judge.

This Memorandum concludes an adversary proceeding which arose from the prepetition issuance of a letter of credit which was negotiated in order to enable the Debtor to buy several tons of steel slab. The letter of credit was issued by the Plaintiff, Berliner Handels–Und Frankfurter Bank ("BHF"), on behalf of the Defendant, East Texas Steel Facilities (referred to as "Debt-

or"), formerly, Lone Star Steel Company, for the benefit of Mannesmann Pipe & Steel Company ("Mannesmann").

BHF claims it is entitled to an administrative claim due to postpetition payments to Mannesmann for postpetition steel shipments. The parties have agreed that BHF shall be entitled to an interim administrative claim of $1,620,871.00 pending the decision of the Court. Before the Court for consideration are cross motions for summary judgment. No material facts are in dispute.

## FINDINGS OF FACT

On September 15, 1988, BHF issued an irrevocable stand-by letter of credit in favor of Mannesmann in the amount of $6.5 million. According to the terms of the letter of credit, BHF agreed to pay Mannesmann upon certification that the Debtor had failed to pay more than 15 days after the invoice was due.

On June 12, 1989, an involuntary bankruptcy proceeding under Chapter 11 of the Bankruptcy Code was commenced against the Debtor. On June 30, 1989, an order for relief was entered in the case. The Debtor received two shipments of steel slab after involuntary bankruptcy proceedings began, one shipment on June 26, 1989, and another on June 30, 1989. The total for both shipments amounted to $1,620,871.00. On June 30, 1989, Mannesmann presented BHF with a sight draft, upon which BHF paid Mannesmann $1,620,871.00 for the June 26 and June 30 shipments as well as an additional amount for a prior shipment.

BHF argues that it is entitled to the same rights of reclamation which are due an unpaid seller under 11 U.S.C. § 546(c). Additionally, BHF asserts an administrative claim pursuant to 11 U.S.C. § 503 because of Mannesmann's postpetition draws on the letter of credit. BHF also argues that it did not agree to extend credit to the Debtor-in-Possession, and is therefore entitled to an administrative priority for its postpetition payments to Mannesmann.

## CONCLUSIONS OF LAW

I. Validity of Claims Under § 546

 Because BHF is not a seller of goods as that term is defined by the Uniform Commercial Code, BHF's claim of reclamation as an unpaid seller may only arise in the context of subrogation of BHF to Mannesmann's rights under 11 U.S.C. § 546.[1] Therefore, BHF must prove that it may be subrogated to Mannesmann's rights, and further BHF must show that it preserved its rights by fulfilling the procedural requirements of § 546.

Section 546 of the Code provides that:

(c) [T]he rights and powers of a Trustee under §§ 544(a), 547, and 549 of this title are subject to any statutory or common-law right of a seller of goods that has sold goods to the debtor, in the ordinary course of such seller's business, to reclaim such goods if the debtor has received such goods while insolvent, but—

(1) such a seller may not reclaim any such goods unless such seller demands in writing reclamation of such goods before ten days after receipt of such goods by the debtor; and

**1.** Section 546(c) is a corollary adaptation of U.C.C. § 2–702(2). According to the historical and revision notes pertaining to 11 U.S.C. § 546, the purpose of this bankruptcy section is, in part, to recognize the validity of U.C.C. 2–702. Notes of Committee on the Judiciary, Senate Report No. 95–989.

This U.C.C. section has been adopted into the Texas statutes. *See* Tex.Bus. & Com.Code Ann. § 2.702(b) (Vernon 1968), stating, "[w]here the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt." BHF cannot be a seller inasmuchas § 2.103 defines a seller as "a person who sells or contracts to sell goods." Tex.Bus.

& Com.Code Ann. § 2.103 (Vernon 1968). The Uniform Commercial Code further supports the fact that BHF is not a seller when defining a letter of credit. "Unless otherwise agreed the term 'letter of credit' or 'banker's credit' in a contract for sale means an irrevocable credit issued by a financing agency ..." Tex.Bus. & Com.Code Ann. § 2.325(c) (Vernon 1968). However, BHF does fit the definition of a financing agency who "in the ordinary course of business makes advances against goods or documents of title or ... who similarly intervenes between persons who are in the position of seller and buyer in respect to the goods." Tex. Bus. & Com.Code Ann. § 2.104(b) (Vernon 1968).

(2) the court may deny reclamation to a seller with such a right of reclamation that has made such a demand only if the court—

(A) grants the claim of such a seller priority as a claim of a kind specified in § 503(b) of this title; or

(B) secures such claim by a lien.

Counsel for both parties have agreed that BHF has made a timely demand for goods as set forth in 11 U.S.C. § 546(c).

The threshold question is whether BHF may be subrogated to Mannesmann's rights. BHF relies on the concept of subrogation under the Bankruptcy Code, the Texas Business and Commerce Code, and the doctrine of equitable subrogation. The Court finds, however, that the relevant consideration is whether letter of credit law permits BHF, an issuer, subrogation to the rights of Mannesmann, the beneficiary.

■ It has been observed that a letter of credit is not an ordinary contract, but is rather a unique device developed for specific needs of the marketplace. *In the Matter of Coral Petroleum*, 878 F.2d 830, 832 (5th Cir.1989). Because of the unique character of the letter of credit, the 5th Circuit has cautioned application of contract law to letter of credit law saying, "[t]he law of contracts supplements the law of credits only to the extent that contract principles do not interfere with the unique nature of credits." *In the Matter of Coral Petroleum*, 878 F.2d at 832 *citing*, J.F. Dolan, *The Law of Letters of Credit*, ¶ 2.02 at 2–4 (1984). Thus, the issuer's rights are limited to the laws and principles that govern letters of credit. In this context, of particular importance is the "independence principle."

■ The independence principle describes the basic letter of credit transaction as the formation of three separate and independent obligations between three different parties. *See Originala Petroleum*, 39 B.R. 1003, 1007 (Bankr.N.D.Tex.1984). Ordinarily, three parties are involved: (1) the customer (the Debtor), the one who generally procures a letter of credit, (2) the beneficiary (Mannesmann), the party who receives the funds pursuant to the letter of credit, and (3) the issuer (BHF), the party that commits to pay upon the occurrence of a certain condition. The three obligations include: (1) the underlying contract, usually between a buyer of goods, who applies to a bank for the letter of credit, and a seller of goods who becomes the beneficiary under the credit; (2) a contract between the issuing bank and its customer to issue a letter of credit; and (3) the letter of credit itself which is a contract between the issuing bank and the beneficiary. *In the Matter of Coral Petroleum, Inc.*, 878 F.2d at 832 (5th Cir.1989), *see also Originala Petroleum*, 39 B.R. at 1007.

This Court, in applying Texas Law, has found the relationship between the issuer and the beneficiary codified in Texas Business & Commerce Code, which provides in pertinent part:

An issuer must honor a draft or demand which complies with the terms of the relevant credit *regardless* of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and beneficiary.

Tex.Bus. & Com.Code Ann. § 5.114 (Vernon 1990) (emphasis added). This section distinguishes the issuer's obligation to the beneficiary from beneficiary's obligation to the customer.

The independence principle has been referred to as "the cornerstone of the commercial vitality of letters of credit." *Ward Petroleum Corp. v. Federal Deposit Insurance Corp.*, 903 F.2d 1297 (10th Cir. 1990); *See In the Matter of Compton Corp.*, 831 F.2d 586, 590 (5th Cir.1987). It is important to international finance that the independence principle be preserved. *Originala Petroleum Corp*, 39 B.R. at 1007, *citing East Girard Sav. Ass'n. v. Citizens National Bank*, 593 F.2d 598 (5th Cir.1979); *Republic National Bank of Dallas v. Northwest National Bank of Fort Worth*, 578 S.W.2d 109, 112 (Tex. 1979).

II. The Rights of Subrogation Under 11 U.S.C. § 509

*A. Requirements under the Code*

■ BHF asserts that it has subrogation rights under 11 U.S.C. § 509 which provides:

(a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

Section 509 affords subrogation rights to a party liable with the debtor.

The Court concludes that BHF may not be subrogated under § 509 because BHF was never "an entity[ ] liable with the debtor on, ... a claim of a creditor against the debtor," as required in § 509(a). Although BHF may have issued the letter of credit on the Debtor's behalf, and may have paid Mannesmann's invoice in full, neither act made BHF liable on the debt with the Debtor. According to the independence principle, BHF could not have been liable on the debt with the Debtor because the Debtor's obligation to Mannesmann was independent of BHF's obligation to Mannesmann.

According to the independence principle each party is independently liable. Absent some agreement to the contrary, a party in a letter of credit transaction is not liable with any other party on a claim. As an issuer, BHF's obligation to pay the beneficiary, Mannesmann, was independent of the beneficiary's duty to perform for the customer. See J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 18–2 at 712 (2d ed. 1980). When BHF paid Mannesmann, BHF paid its own debt, not a debt of the Debtor. Subrogation is not available to one who simply pays his own debt. *In the Matter of Munzenrieder*, 58 B.R. 228, 231 (Bankr. M.D.Fla.1986). The Debtor contracted with BHF for BHF to pay Mannesmann if certain conditions occurred, which did in fact occur.

■ BHF cites the language in the Comment to § 5.109 as authority to invoke its rights of subrogation. The comment to § 5.109 provides:

> The customer will normally have direct recourse against the beneficiary if performance fails, whereas the issuer will have such recourse only by assignment of or in a *proper case* subrogation to the rights of the customer.

Tex.Bus. & Com.Code Ann. § 5.109 (Vernon 1990), Comment 1 (emphasis added). In order to prevail under this analysis, BHF must demonstrate (1) that the Uniform Commercial Code provides for an issuer to be subrogated to the rights of the beneficiary; and (2) this is a "proper case" which entitles it to such subrogation.

BHF has cited no authority to support its conclusion that it is within the parameters of subrogation under the Uniform Commercial Code.[2] The sole subrogation right entertained in the comment is the issuer's right to be subrogated to the customer's rights. BHF takes liberty with the comment by expanding its scope to suggest that in a proper case the issuer may be subrogated to the rights of a beneficiary. Moreover, the Court does not find commentary persuasive authority.

A dispute, similar to the case at bar, arose in *Merchants Bank & Trust Co. v. Economic Enterprises, Inc.* That court stated, "Simply because [the issuer] might 'in a proper case' be subrogated to the rights of [the customer], it does not follow that it should be subrogated to the rights of [the beneficiary]...." and that Court further observed that allowing an issuer subrogation rights to the beneficiary "would violate the spirit and tenet of the law developing under Article 5 which, as noted, prohibits an issuer from interfering with the underlying contract unless explicit language in the letter of credit so provides." 44 B.R. 230, 232 (Bankr.D.Conn. 1984).

---

**2.** For its support, BHF cites Jarvis, "Standby Letters of Credit—Issuers' Subrogation and Assignment Right—Part II," 10 U.C.C.L.J. 38 (1978). In the article cited by BHF, the commentator noted:

> Most commonly, the seller-beneficiary of a sales letter of credit will have no general financial contacts with the buyer.... Consequently, the beneficiary is unlikely to have any rights against the buyer to which the issuer could be subrogated or which could be similarly assigned.

Jarvis, at p. 44.

**B. An Issuer of a Letter of Credit Vis-a-Vis a Guarantor**

■ BHF contends that it acted as a guarantor which entitles it to subrogation. This argument necessarily incorporates the conclusion that the same legal consequences for guarantors should be bestowed upon issuers of letters of credit. However, a letter of credit is not a guaranty. "The legal relations between the customer and the beneficiary turn on the underlying transaction between them ... The issuer is not a guarantor of the performance of these underlying transactions ..." Comment Uniform Commercial Code § 5–103.[3]

■ There are numerous differences between a letter of credit and a guaranty, the most important of which is the issuer's independent duty to perform notwithstanding the perfect performance of the customer or the beneficiary. It is these differences that prohibit the issuer of a letter of credit from sharing a guarantor's subrogative rights. The Court notes other differences, for example, the obligation of a guarantor is secondary while the obligation of an issuer is primary. In other words, the obligation of a guarantor depends on the existence of a primary obligation on the part of the guarantor's principal to the principal's creditor. Under letter of credit law, an issuer's obligation is primary and independent of the customer's rights. Another difference is the fact that the guarantor can set up defenses which the principal has against a creditor, but an issuer may not assert the customer's defenses against the beneficiary. Further, the obligation of a guarantor cannot mature *unless* the principal debtor has *actually defaulted*, while an issuer's obligation arises when presentment of documents or other papers are made in compliance with the terms of the letter of credit. J. White and R. Summers, *Handbook of the Law*

Under the Uniform Commercial Code § 18–2 at 713 (2d ed. 1980).

**III. Equitable Subrogation**

BHF also claims a right to equitable subrogation. The Court's authority to grant such equitable relief is limited by express rules of law. *Economic Enterprises*, 44 B.R. at 232; *citing In re Burley*, 11 B.R. 369, 373 (Bankr.C.D.Cal.1981).

■ The principles of equitable subrogation dictate a five part test which BHF must satisfy to prevail. The test is as follows: (1) the claimant must have made payment to protect his own interests; (2) the claimant must not have been a volunteer; (3) the payment must satisfy a debt for which the claimant was not primarily liable; (4) the entire debt must have been paid; and (5) subrogation must not cause injustice to rights of others. *In re Kaiser Steel Corp.*, 89 B.R. 150, 152 (Bankr.D.Colo.1988). As discussed *infra*, BHF was never jointly liable. Furthermore, BHF was primarily liable when the conditions of the letter of credit were met. Because of a prepetition agreement, BHF was obligated to pay Mannesman when presentation was made in accordance with the documentary requirements on the face of the letter of credit. See *In the Matter of Coral Petroleum*, 878 F.2d at 323. Thus, to allow BHF administrative priority would cause injustice to others who might truly be entitled to treatment in that class of claims.

As stated earlier in this Opinion, the obligations and duties created by the contract between the issuer and the beneficiary are completely separate and independent from the underlying transaction between the beneficiary and the bank's customer. *In the Matter of Coral Petroleum*, 878 F.2d at 323, citing, *Philadelphia Gear Corp. v. Central Bank*, 717 F.2d 230, 235 (5th Cir. 1983). BHF cannot satisfy all parts of the

---

3. The comments demonstrate the drafters' reluctance to impart various Article 3 characteristics on Article 5 instruments. The comment to § 5.101 provides in pertinent part:

The other source of law respecting letters of credit is the law of contracts with *occasional unfortunate excursions* into the law of guaran-

ty. This Article is intended within its limited scope ... to set an independent theoretical frame for the further development of letters of credit.

Tex.Bus. & Com.Code Ann. § 5.101 (Vernon 1989) (emphasis added).

requirements of equitable subrogation, therefore, BHF cannot prevail on a theory of equitable subrogation.

### III. The Post–Petition Payment of the Letter of Credit

BHF claims that because it paid funds under the letter of credit postpetition, it is entitled to an administrative priority, and further contends that pursuant to 11 U.S.C. § 365, the debtor-in-possession could not assume the letter of credit.

■■■ Section 365(c) provides that the "trustee may not assume or assign any executory contract ... if—(2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor." The comment to this provision states:

> The purpose of this subsection, at least in part, is to prevent the trustee from requiring *new advances* of money or other property. This section permits the trustee to continue to use and pay for property *already advanced,* but is not designed to permit the trustee to demand *new* loans or *additional* transfers of property under the lease commitments.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 348 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 59 (1978); U.S.Code Cong. & Admin.News 1978, pp. 5787, 6304 (emphasis added). The comment emphasizes that credit not in existence at the time of the filing of the bankruptcy petition, will not be allowed. This does not preclude the trustee from using existing financing.

■■■ The Texas statute concerning letters of credit, § 5.106(a) states:

> Unless otherwise agreed, a credit is established
>
> (1) as regards the customer as soon as a letter of credit is sent to him or the letter of credit or an authorized written advice of its issuance is sent to the beneficiary; and
>
> (2) as regards the beneficiary when he receives a letter of credit or an authorized written advice of its issuance.

Tex.Bus. & Com.Code Ann. § 5.106(a) (Vernon 1968). Mannesmann received written notice of the irrevocable letter of credit from BHF dated September 15, 1988. The Court observes that the instrument at issue in this case is an *irrevocable standby letter of credit.* Under the terms of the letter agreement, BHF could not have revoked the letter of credit under any circumstances, even in the event of a default. The Court notes that involuntary, and voluntary bankruptcy, are listed in the agreement between BHF and East Texas as acts of default which grant BHF the right of offset against certain "deposits" in the event of default. Plaintiff's Motion for Summary Judgment Exhibit 3. BHF's only rights under the letter agreement were to apply certain deposits as offset against the amount owed by BHF.

■■■ BHF also claims that it has an administrative priority because of its postpetition extension of credit to the Debtor pursuant to 11 U.S.C. § 364. This argument overlooks the fact that BHF and East Texas entered into a letter of credit agreement prior to the petition date. The agreement between the Debtor and BHF was a prepetition agreement. BHF's payments to Mannesmann merely acted to change the character of the claim by converting a contingent claim to a fixed claim. *See In re Briggs Transportation Co.,* 37 B.R. 76 (Bankr.D.Minn.1984).

■■■ To determine the character of the transaction, the Court looks to the time the agreement was consummated, not the time which the performance was made. "It is established that a debt is not entitled to priority as a cost and expense of administration simply because the claimants' right to payment arises after the debtor-in-possession has taken some action." *In re Mammoth Mart Inc.,* 536 F.2d 950, 955 (1st Cir.1976). For example, the mere happenstance of delivery after the filing of bankruptcy under a prepetition contract neither creates a postpetition contract nor entitles the seller to an administrative claim. *In re Coast Trading Co., Inc.,* 31 B.R. 677, 679 (Bankr.D.Ore.1983). Obligations which arise out of prepetition contracts, but are due postpetition, are prepeti-

tion debts. *In re Ryan,* 100 B.R. 411, 415 (Bankr.N.D.Ill.1989).

The payment by BHF to Mannesmann was the result of a prepetition obligation and is therefore a prepetition debt. BHF may not claim an administrative priority for this prepetition obligation.

 Finally, BHF cites *Mammoth Mart* for the proposition that it has an independent right to an administrative priority. According to *Mammoth Mart,* a priority will be accorded a debt when it (1) arises from a transaction which is induced by the debtor in possession and (2) is beneficial to the debtor-in-possession in the operation of its business. Although BHF satisfies the second prong of this test, BHF fails the first prong because the transaction was not induced by the debtor-in-possession. BHF made the letter of credit agreement with the prepetition entity, not the debtor-in-possession. "If the inducement came from the prepetition debtor, then consideration was given to the [prepetition] entity rather than to the debtor-in-possession. However, if the inducement came from the debtor-in-possession, then the claims of the creditor are given priority." *In re White Motor Corp.,* 831 F.2d 106, 110 (6th Cir.1987). *See also, In re Jartran, Inc.,* 732 F.2d 584, 586 (7th Cir.1984).

Although this is seemingly a harsh result, the issuer of a letter of credit is fully able to protect itself from a situation like the case at bar. BHF could have required collateral from the Debtor to secure the letter of credit. See e.g. 826 F.2d 440. *In re Glade Springs Inc. (Chemical Bank v. Craig),* (6th Cir.1987). BHF has produced no evidence to demonstrate that reformation of the contract is in order. Nor may the Court, based upon equity, rewrite the contract between the parties to afford BHF greater protection than that for which it bargained. BHF is in the business of selling letters of credit; it could factor in the risk of this situation.

This court finds IN FAVOR of and GRANTS the Motion for Summary Judgment of the Debtor. Accordingly, the Motion for Summary Judgment of Berliner Handels–Und Frankfurter Bank is DENIED.

Counsel for the Debtor is requested to prepare an appropriate order.