In re CARLEY CAPITAL
GROUP, Debtor.

Thomas G. BEACH, Charles A. Carpenter, Charles R. Carpenter, Charles I. Trainer, Baker G. Clay and Daniel J. McCarty, Plaintiffs,

v.

FIRST UNION NATIONAL BANK OF NORTH CAROLINA, Defendant.

No. 89–C–665–S.

United States District Court,
W.D. Wisconsin.

Sept. 10, 1990.

Daniel W. Stolper, Stafford, Rosenbaum, Rieser & Hansen, Madison, Wis., for plaintiffs.

J. Michael Booe, Petree Stockton & Robinson, Charlotte, N.C., Kenneth B. Axe, Lathrop & Clark, Madison, Wis., for defendant.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

This is an appeal of the Bankruptcy Court's decision granting defendant's motion to dismiss an adversary proceeding. 118 B.R. 982 Jurisdiction is pursuant to 28 U.S.C. §§ 158(a) and 1334. Because the Bankruptcy Court granted defendant's motion to dismiss pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, no factual issues are presented and this Court reviews the Bankruptcy Court's conclusions of law de novo. In re Herbst, 95 B.R. 98, 100 (W.D.Wis.1988).

The following is a summary of relevant facts taken from the allegations of plaintiffs' complaint.

In August 1985 the debtor, Carley Capital Group, a general partnership, received a loan from the defendant in the amount of $6,800,000. The loan was secured by certain North Carolina real estate. In addition, defendant required additional protection against default by debtor in the form of a $1 million irrevocable letter of credit.

In order to obtain the letter of credit debtor entered into a contract with plaintiffs under which the plaintiffs agreed to arrange for a $1 million irrevocable letter of credit. Pursuant to this agreement plaintiffs contracted with First Wisconsin National Bank of Milwaukee which issued its irrevocable letter of credit for the benefit of the defendant.

The letter of credit provided that an amount not exceeding $1 million would be available upon submission of a draft by the defendant accompanied by a signed statement setting forth either that the debtor, Carley Capital Group, was not in compliance with all the terms and conditions of the loan, or that a satisfactory letter of credit had not been supplied more than 60 days prior to the expiration date of this letter of credit. The letter of credit which was to expire originally on July 1, 1988 was subsequently renewed until July 1, 1989. After plaintiffs agreed to arrange for the letter of credit and after the letter of credit was issued, defendant and debtor entered into several amendments to the financing arrangement which included the increase of the principal amount, release of collateral, extension of maturity dates, and the consolidation of other obligations. No consent was sought or received from plaintiffs to these modifications to the loan agreement.

In June 1989 defendant drafted against the letter for the full amount of $1 million, and First Wisconsin National Bank of Milwaukee paid the draft. As a consequence plaintiffs, by virtue of their agreement with First Wisconsin, became liable to reimburse First Wisconsin for the $1 million plus actual interest and costs charged and assessed against them by First Wisconsin.

## BACKGROUND

Plaintiffs' amended complaint in the bankruptcy adversary proceeding alleged two causes of action. First, plaintiffs asserted that by arranging for the letter of credit the plaintiffs assumed the legal position of guarantors of the Carley Capital Group debt. As a consequence plaintiffs assert that the substantial changes in the underlying loan agreement between defendant and Carley Capital Group relieved them of their obligation under the letter of credit. Second, plaintiffs claim that by virtue of the draft against the letter of credit they had paid the debt of another and were entitled to be subrogated to the security interest of the defendant against the debtor. Subrogation was allegedly available under the Bankruptcy Code, 11 U.S.C. § 509, as well as the common law doctrine of equitable subrogation.

The Bankruptcy Court granted defendant's motion to dismiss, holding that as a matter of law the plaintiffs, as customers who arranged for the issuance of a letter of credit, are not afforded the legal status of guarantors, nor are they entitled to benefit from the doctrine of equitable subrogation or the statutory subrogation of the Bankruptcy Code. The principal reason for the Bankruptcy Court's decision is that the nature of plaintiffs' liability is primary, and each of the causes of action advanced by

the plaintiffs has as an element that their obligation must be secondary to an underlying debt. Because this Court agrees with the Bankruptcy Court that the nature of a letter of credit is an independent primary obligation which cannot give rise to the rights and defenses available under the doctrines of guarantee or subrogation, the decision of the Bankruptcy Court must be affirmed. In affirming the decision of the Bankruptcy Court this Court rejects those decisions which would extend the doctrines of guarantee and subrogation to the law of letters of credit.

There is no real dispute between the parties or among courts which have considered the issue that a standby letter of credit, although serving the same function as a guarantee, assuring full payment to a creditor, differs from the guarantee in several respects. The most fundamental difference, the primary nature of the letter of credit liability, was summarized by the Seventh Circuit Court of Appeals in *Bank of North Carolina, N.A. v. Rock Island Bank*, 570 F.2d 202, 206, n. 7 (1978):

> Unlike the true contract guarantee, however, the guarantee [standby] letter of credit will oblige its issuer to pay on the presentation of specified documents showing a default, rather than upon proof of the fact of default. (Citations omitted) The central distinction between the two instruments, thus, is that the letter of credit creates a primary liability on an original obligation—to pay on the presentation of documents—where the contract of guarantee creates a secondary liability on the preexisting obligation of another—to pay in the event that the other does not. (Citations omitted)

The dispute between the parties, as well as the division among courts addressing the applicability of the doctrines of guarantee and subrogation to letters of credit, revolve not around whether this difference exists, but around its importance. The Bankruptcy Court, as well as other courts which have carefully considered the elements required for invocation of guarantee and subrogation doctrines, have concluded that this distinction places letters of credit outside the scope of those doctrines. Plaintiffs, as well as the authorities they cite, charge that this result exalts form over substance since standby letters of credit are functionally equivalent to contracts of guarantee.

*Traditional Elements of Guarantee and Subrogation*

A brief examination of the elements necessary to establish the rights of the guarantor or subrogee confirms that a letter of credit does not technically fulfill the requirements. As noted above, a guarantee is in essence a secondary obligation requiring the guarantor to pay only in the event of a default by the principal obligor. *Bank of North Carolina*, 570 F.2d at 206, n. 7. *Black's Law Dictionary* 634 (5th ed. 1979). As a result most courts which have considered the issue have held that issuers in letters of credit transactions do not meet the definition of a guarantor. *In re Taggatz*, 106 B.R. 983, 987 n. 1 (Bankr.W.D. Wis.1989). *First Arlington Nat. Bank v. Stathis*, 115 Ill.App.3d 403, 71 Ill.Dec. 145, 450 N.E.2d 833 (1983).

Similarly, § 509(a) of the Bankruptcy Code is applicable only where an entity is "liable with the debtor on, or has secured, a claim of a creditor against the debtor, and that pays such claim ..." As the Bankruptcy Court correctly held, the requirement that plaintiffs have paid the claim of the debtor is a requirement for secondary liability and cannot be fulfilled by the draft against a letter of credit. Additionally, this Court finds that a sequence of contracts leading to the issuance of a letter of credit in favor of a lender does not establish that the customer who arranged for the letter of credit has "secured the debt." *In re Kaiser Steel Corp.*, 89 B.R. 150, 154 (Bankr.D.Colo.1988). The plaintiffs' repeated use of the term "pledge" in connection with the letter of credit is misleading and inaccurate. In fact, a letter of credit is an independent and primary obligation of the issuer to the beneficiary and is not the "pledge" of any asset. Only where the beneficiary subsequently assigns or transfers its rights under the letter of credit to secure another obligation can a letter of credit constitute a "pledged" as-

set. *See, e.g., Warner v. Central Trust Co.*, 798 F.2d 167, 170 (6th Cir.1986).

■ Finally, it is also clear that the doctrine of equitable subrogation has as one of its elements that the plaintiffs be secondarily liable on the underlying debt. *In Re East Texas Steel Facilities, Inc.*, 117 B.R. 235 (Bankr.N.D.Tex.1990):

> The principles of equitable subrogation dictate a five part test ... as follows: (1) The claimant must have made payment to protect his own interests; (2) the claimant must not have been a volunteer; (3) *the payment must satisfy debt for which the claimant was not primarily liable;* (4) the entire debt must have been paid; and (5) subrogation must not cause injustice to the rights of others. (Emphasis added.)

*See also Rock River Lumber Corp. v. Universal Mortgage Corp.*, 82 Wis.2d 235, 241, 262 N.W.2d 114 (1977). In *Rock River Lumber* the Wisconsin Supreme Court noted that subrogation is generally available when a person "pays a debt which in equity and good conscience should be satisfied by another." *Id.* at 240, 262 N.W.2d 114. This definition implicitly includes the requirement that liability be secondary. It is clear that subrogation is not available as a result of the payment of a principal obligation under a letter of credit. *In re Kaiser Steel Corp.*, 89 B.R. at 154.

Under each of the theories advanced by the plaintiffs the technical requirements are not met because of the primary nature of liability under a letter of credit.

*Expansion for Reasons of Equity and Policy*

■ The Court now addresses the argument, accepted by some courts, that notwithstanding the technical failure to meet the elements required for these doctrines, a standby letter of credit is, in essence, the same as a guarantee and should be treated as such. This view was adopted in *In Re Minnesota Kicks Inc.*, 48 B.R. 93 (Bankruptcy D.Minn.1985). The Court expressly recognized the distinctions between a standby letter of credit and guarantee, but nevertheless held that guarantor status and the right to subrogation should be afforded as a matter of policy. *Id.* at 104–105. Similarly, the Bankruptcy Court in *In Re Sensor Systems, Inc.*, 79 B.R. 623, 626 (Bankr.E.D.Pa.1987) failed to consider the actual requirements for guarantee or subrogation but noted "we further believe that a party issuing a letter of credit in favor of another is logically characterized as a 'guarantor' or a 'codebtor.'" The essence of these decisions, it appears, is that since the guarantor's rights and the rights of subrogation are equitable doctrines and since policy and equity support their application in the case of a letter of credit, the benefits of these doctrines should be extended to a customer in a letter of credit transaction.

Because this Court concludes that there are not valid policy reasons for the extension of guarantor rights to a customer in letters of credit transactions, it rejects the extension of those doctrines adopted by the cited bankruptcy cases. The primary nature of liability under a letter of credit is more than a mere formality and is in fact the essence of the letter of credit of transaction. It is the primary nature of the liability under the letter of credit which creates the "independence principle" which gives letters of credit their unique usefulness. The independence principle has been referred to as "the cornerstone of commercial vitality of letters of credit." *In Re East Texas Steel Facilities, Inc.*, 117 B.R. at 239. (Citations omitted.)

This principle relieves parties to a letter of credit transaction from the burdens of ascertaining and policing contractual relationships in which they are not involved. As a result, the beneficiary of a letter of credit obtains a higher lever of security with the letter of credit and need only concern itself with its own contractual relationships. Similarly, the issuer of a letter of credit acts as a mere lender relying upon the strength of its contract with its customer rather than being required to monitor the underlying transaction. Indeed, it is this separation from the underlying contract which justifies permitting banks, which are ill-suited for this monitoring task, to issue letters of credit while forbid-

ding their entry into guarantee contracts. Dolan, *The Law of Letters of Credit*, 2–28 (1984).

Consistent with the unique, independent nature of letters of credit, the comments to the Uniform Commercial Code demonstrate a distinct reluctance to import doctrines of guarantee and subrogation into the law of letters of credit. Specifically, UCC official comment 3 to § 5–103 provides: "The legal relations between the customer and the beneficiary turn on the underlying transaction between them.... The issuer is not a guarantor of the performance of these underlying transactions." The sentiment is further expressed in the comment to § 5–101, which provides in part: "The other source of law respecting letters of credit is the law of contracts *with occasional unfortunate excursions into the law of guaranty*. This article is intended within its scope ... to set an independent theoretical frame for the further development of letters of credit." (Emphasis added.)

*Existence of a Fourth Party to the Transaction*

Plaintiffs strenuously assert that the transaction in this case is distinguishable from cases involving conventional three-party letter of credit transactions because of their presence as a fourth-party customer. This Court finds no persuasive reason to apply the doctrines of guarantee or subrogation to a letter of credit transaction simply because a fourth party has intervened to facilitate the acquisition of the letter of credit. Although the Court in *In Re Minnesota Kicks* applied subrogation under such circumstances, it did so expressly because and to the extent that the issuer was entitled to such remedies. 48 B.R. at 105.

There is no justification for treating the plaintiffs in this matter differently from the issuer of the letter of credit. In both cases the issuer or the customer is required to estimate the credit-worthiness of the party with whom they contract. In both cases neither has control over the underlying transaction and could therefore be disadvantaged by the change in the terms of that transaction. The plaintiffs' role in the transaction in this case has been aptly described as that of a facilitator who is satisfied with the credit-worthiness of the debtor in the underlying transactions.

> Where the beneficiary and the applicant cannot settle on one third party that has satisfied itself as to the applicant's ability to perform its financial obligations under the underlying agreement, and that the beneficiary deems to have sufficient financial means to satisfy such financial obligations of the applicant, a chain of third parties, each of which is satisfied with the credit of its particular applicant, and the last of which has credit standing satisfactory to the beneficiary, is created.

H. Arnold and E. Bransilver, *The Standby Letter of Credit—The Controversy Continues*, 10 U.C.C.L.J. 273, n. 5 (1978). These plaintiffs serve the sole function of being satisfied with the credit-worthiness of debtor, Carley Capital Group, and being able to obtain the letter of credit from First Wisconsin. This position is not substantially different from that of an issuer and should not create different rights.

Furthermore, there is no equitable reason to grant such additional rights to the plaintiffs in this case since they could have achieved the same protection by contract. They could have obtained such security directly in their contract with the debtor through a secondary security interest in the collateral granted to the creditor, or they could have obtained such security by requiring the assignment of excess security rights under the terms of the letter of credit when contracting for its issuance. In either case the plaintiffs had the ability by virtue of the contracts with the parties with whom they dealt to protect themselves in exactly the same way that they seek to protect themselves by subrogation.

Adopting such a view which would distinguish transactions involving four or more parties from the conventional three-party transaction would seriously undermine the purpose of a letter of credit. If such were the law the beneficiary of the letter of credit would be burdened with examining and policing a contract to which it was not

a party and maintaining continued notice and contact with a third party with whom it did not transact. In addition, greater uncertainties and the threat of litigation would result from the receipt of the letter of credit. As a practical matter the letter of credit would be as cumbersome as a guarantee and would lose the advantages of certainty and lower administrative and legal costs. The independence principle requires that parties protect themselves through their direct contractual relationships and greatly restricts remedies outside those relationships. This Court sees no reason to limit this independence principle where a fourth party is involved in the transaction.

Finally, plaintiffs have relied heavily upon the case of *Warner v. Central Trust Co.*, 798 F.2d 167 (6th Cir.1986) in support of their argument that as fourth parties they ought to be treated differently from the issuer in letters of credit transactions. This Court finds *Warner* to be consistent with its view of the independence principle. It does not find it to support the position that fourth party customers in a letter of credit transaction are entitled to guarantor status. In order to understand why *Warner* is distinct from this case it is necessary to carefully examine its underlying facts. In *Warner* the plaintiff was a limited partner who was indebted to the partnership for half the value of his limited partnership interest. As assurance for this indebtedness he contracted with the issuer for a letter of credit for the benefit of the partnership. To fully fund its venture the partnership borrowed funds from the defendant and assigned the letter of credit as collateral for the partnership loan. Thus *Warner* did not address a true four-party letter of credit transaction but a conventional three-party transaction where the beneficiary subsequently assigned the letter of credit. *Warner v. Central Trust Co.*, 798 F.2d at 169–70; *Warner v. Federal Deposit Ins. Corp.*, 605 F.Supp. 521, 530 n. 4 (S.D. Ohio 1984).

The defendant in *Warner* obtained only those rights which were possessed by the debtor as beneficiary of the letter of credit transaction. The rights of transferees are no better than those of the original beneficiary. Dolan, *The Law of Letters of Credit*, 10–20 (1984). In addition, the facts of *Warner* permit the inference that a direct relationship existed between plaintiff and defendant. The loan from the defendant to the partnership was expressly for the benefit of the limited partners which indirectly financed their debt, and the plaintiff expressly assumed liability for payment of the debt.

Accordingly, whatever legal theory is applied to *Warner*, guarantee, agency or contract, the independence principle is not offended by examining the underlying agreements between the parties. In contrast, this case presents truly independent customers who had no relationship to the defendant directly or by virtue of the assignment of the letter of credit.

In conclusion, the Court finds that the doctrines of guarantee and subrogation are not applicable to letter of credit transactions under the circumstances of this case. In addition, extension of those doctrines to a transaction involving a letter of credit would seriously undermine the usefulness of the instrument without substantially advancing the equities of the transaction. The unique contribution of letters of credit to commercial transactions is the certainty and swiftness of payment and the limitation of administrative and legal expenses. These goals would not be obtained if parties to the transaction were permitted to invoke the law of guarantee and subrogation.

## ORDER

IT IS ORDERED that the decision of the Bankruptcy Court granting defendant's motion to dismiss is AFFIRMED.