**In re KAISER STEEL CORPORATION, Debtor.**

**BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Plaintiff,**

v.

**KAISER STEEL CORPORATION, Defendant, and GATX Leasing Corporation, Intervenor–Defendant.**

**KAISER STEEL CORPORATION, Plaintiff, and GATX Leasing Corporation, Intervenor–Plaintiff,**

v.

**BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Defendant.**

Bankruptcy No. BK–87–B–1552–E. Adv. Nos. 88 C 0328, 88 C 0332.

United States Bankruptcy Court, D. Colorado.

Aug. 8, 1988.

Jack L. Smith, Elaine E. Hill and Peter H. Rudy of Holland & Hart, Denver, Colo., Harris B. Taylor of Bank of America, and Judith Gilbert of Denton, Hall, Burgin & Warrens, Los Angeles, Cal., for Bank of America Nat. Trust and Sav. Ass'n.

Craig A. Christensen of Sherman & Howard, Denver, Colo., for Kaiser Steel Corp.

MEMORANDUM OF DECISION

RICHARD L. BOHANON,*
Bankruptcy Judge.

The central issue in this adversary proceeding concerns whether a bank which pays a standby letter of credit may be subrogated to the rights of the creditor to proceed on its security interest in debtor's assets. Kaiser Steel Corporation, the debtor, and Bank of America each seek a judgment declaring their respective rights. Shortly before trial GATX Leasing Corporation settled its dispute with the Bank.

_____

* RICHARD L. BOHANON, Chief Judge, United States Bankruptcy Court for the Western District of Oklahoma, sitting by designation.

The facts are not complex but lead into an area in which the law is developing. In 1985 Kaiser required a standby letter of credit in the amount of $4,646,000 in favor of the California Workers Compensation Self Insurance Plan. It applied to the Bank for the credit and secured payment to it with a deposit of cash collateral of $929,000 and a security agreement granting the Bank a lien on the cash collateral, which was placed in a segregated account. The security agreement contained standard cross-collateralization language providing that the collateral secured payment of any obligations of Kaiser to the Bank. Upon receipt of the deposit and documents the Bank issued its standby letter of credit stating it will pay the full amount upon advice from the State that Kaiser was in default to it.

Shortly thereafter Kaiser completed construction of a large, unique oceangoing barge used for specialized purposes in offshore drilling for oil and gas. At this time Kaiser was in need of cash and approached GATX proposing that it buy the barge for $20,000,000 and lease it back to Kaiser. GATX was agreeable conditioned upon delivery to it of a standby letter of credit in the amount of $3,250,000 and a lien on virtually all of Kaiser's assets to secure Kaiser's lease payments for the barge.

Kaiser again approached the Bank for the standby letter of credit and it was agreeable, conditioned upon delivery of a like amount, $3,250,000, to the cash collateral account and execution of a second security agreement identical in terms to the one granted for the workers compensation letter of credit. The transaction was closed with delivery of the lien on all Kaiser's assets to GATX and Kaiser used $3,250,000 of the sale proceeds for the cash collateral deposit. The Bank then delivered the standby letter of credit to GATX which provided, in pertinent part, that the Bank would pay the full $3,250,000 upon advice from GATX that Kaiser was in default.

In early 1987 Kaiser defaulted on the workers compensation obligation and the State drew against the letter of credit for the entire $4,646,000. Upon payment the Bank setoff the full amount in the cash collateral account, $4,179,000. Kaiser then filed its Chapter 11 petition.

Subsequently Kaiser defaulted on its lease payments to GATX who then drew against its letter of credit for the full $3,250,000. This payment forms the subject of this proceeding.

Under a bankruptcy court approved arrangement Kaiser and GATX began selling the assets pledged to GATX, to reduce its $16,750,000 balance, with an agreement for division of the sale proceeds. The debt to GATX has been paid down to approximately $1,000,000. The Bank does not seek to interfere with this arrangement but claims that once GATX has been paid it is entitled to be subrogated to GATX's security interest in Kaiser's remaining assets for payment of the $3,250,000. Kaiser argues that the Bank may not be subrogated to GATX's rights under both bankruptcy and nonbankruptcy law.

It is plain that entities such as sureties, guarantors and comakers who are secondarily or jointly liable with a debtor may be subrogated to the rights of the party whom they pay to proceed to enforce that party's rights against the debtor. 3 *Collier on Bankruptcy* (MB) ¶ 509.01 (15th ed. 1979). The controversy here is whether the issuer of a standby letter of credit fits in any of these categories. The Bank contends that the credit is the "functional equivalent of a guaranty" or "in essence a guaranty with a waiver of contractual defenses." Kaiser contends that the standby letter is the independent, primary obligation of the Bank and, accordingly, it may not be subrogated to GATX's rights in the collateral.

The standby letter of credit phenonmenon is of recent origin and is to be contrasted with the documentary or sales letter of credit. The latter has traditionally been used in sales transactions and is normally payable by the bank upon presentation of documents of title. *See* 50 Am.Jur.2d, *Letters of Credit, and Credit Cards*, § 3. The standby letter of credit is payable upon the creditor's draft or demand for payment and certification that there has been a default by the debtor. J. White & R. Sum-

mers, *Uniform Commercial Code* § 18–2 at 173 (2d ed. 1984). When that occurs the issuing bank is obliged to pay the full amount regardless of the actual loss or other mitigating factors.

The use of standby letters has apparently come into fashion due to rules which prohibit national banks guaranteeing obligations of others. Use of the letter avoids this prohibition since it is a direct obligation of the bank, not its guarantee of performance by the debtor. *See* 12 U.S.C. § 24.

In the bankruptcy context a "codebtor", in order to be subrogated to the rights of a creditor, must satisfy both the requirements of 11 U.S.C. § 509 and equitable principles of subrogation.

Section 509(a) allows subrogation if the codebtor "is liable with the debtor on, or ... has secured, a claim of a creditor against the debtor...."

■ Additionally, since subrogation is a principle of equity, jurisprudence requires satisfaction of a five part test. The test requires that (1) the codebtor must have made payment to protect his own interests; (2) the codebtor must not have been a volunteer; (3) the payment must satisfy a debt for which the codebtor was not primarily liable; (4) the entire debt must have been paid; and (5) subrogation must not cause injustice to rights of others. *See In re Trasks' Charolais*, 84 B.R. 646 (Bankr. D.S.D.1988) and *In re Flick*, 75 B.R. 204 (Bankr.S.D.Cal.1987).

■ The parties agree that the Bank paid to protect its own interests and was not a volunteer. This then brings us to the third test which is whether or not it was "primarily liable" to GATX for payment of the debt.

It appears to me that the better reasoned authority can lead only to the conclusion that the debt to GATX, evidenced by the standby letter of credit, was primarily an obligation of the Bank.

The first reference is to the language of the document which is labeled an irrevocable standby letter of credit issued by the Bank of America. It says in pertinent part that upon receipt of a sight draft with a statement purportedly executed by an officer of GATX that an event of default exists under the lease with Kaiser, accompanied by the original letter of credit, the Bank will pay $3,250,000.

Secondly, the law of California controls the case, to the extent state law applies, and its Uniform Commercial Code provides that "[a]n issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and beneficiary." Cal.Com.Code § 5114 (West 1983).

These two factors show that the obligation to pay GATX was the obligation of the Bank. Once it received the proper papers both the letter of credit and the statute required that it pay $3,250,000 to GATX. The Bank had this obligation "regardless" of the contract between Kaiser and GATX.

The Court of Appeals for this Circuit has recently considered standby letters of credit and said:

> The liability of a bank issuing a standby letter of credit is nearly absolute: it may dishonor a claim if there are irregularities in documents presented, *see* U.C.C. § 5–114; but otherwise it must pay claims against the letter even if the customer has ordinary defenses from the underlying transaction such as failure of consideration or—analogous to Article 3 'real defenses', U.C.C. § 3–305—illegality or fraud in the inducement.

*Philadelphia Gear Corporation v. Federal Deposit Insurance Corporation*, 751 F.2d 1131, 1136 (10th Cir.1984); *rev'd on other grounds* 476 U.S. 426, 106 S.Ct. 931, 90 L.Ed.2d 428 (1986). *See also Federal Deposit Insurance Corporation v. Liberty National Bank & Trust Co.*, 806 F.2d 961, 968 (10th Cir.1986).

The Bank asserts that its standby letter of credit is equivalent to a guaranty and, therefore, should be accorded the legal consequences of one. The fact remains, how-

ever, that it issued a letter of credit not a guaranty. It argues that to allow guarantors to subrogate and not issuers of letters of credit would be putting form over substance. Some courts have gone down this path, ignoring the independent or primary nature of the liability incurred by letter of credit issuers. *See In re Minnesota Kicks, Inc.*, 48 B.R. 93 (Bankr.D.Minn.1985) (where the court followed a theory espoused by a law review article which has been squarely rejected by at least one other court, *In re Economic Enterprises, Inc.*, 44 B.R. 230 (Bankr.D.Conn.1984)); *In re Air One, Inc.*, 80 B.R. 145 (Bankr.E.D. Mo.1987) (where the court jumps to the conclusion that the issuer of a letter of credit is a guarantor with no discussion of § 509 of the Bankruptcy Code or equitable principles of subrogation); and *In re Sensor Systems, Inc.*, 79 B.R. 623 (Bankr.E.D. Pa.1987) (where the Court concluded it was "logical" to equate an issuer of a standby letter of credit as a guarantor or surety). I simply disagree with and decline to follow these cases.

Maybe, as the Bank argues, and some of the decisions advocate, a standby letter of credit should be considered as a form of guaranty and subject to the same defenses and rights. That, however, is not the law by statute or persuasive jurisprudence. A letter of credit is just that—it is not a guaranty. They are distinctly dissimiliar instruments possessing their own legal characteristics. The issuer of the standby letter of credit assumes an independent obligation to pay the creditor upon presentation of the demand. When the issuer pays *its own* debt it cannot then step into the shoes of the creditor to seek subrogation, reimbursement or contribution from the debtor.

The only exception would be where the parties reach an agreement to the contrary. *See e.g. The Wichita Eagle and Beacon Publishing Company v. Pacific National Bank of San Francisco*, 493 F.2d 1285 (9th Cir.1974). In this case there was no agreement for subrogation.

The recognized tests also support the proposition that the issuing bank is a primary obligor as opposed to a guarantor.

But a true letter of credit arrangement is not a contract of guaranty, even when the letter fulfills some of the functions of a guaranty, as with the "standby" variety under which the issuer is to pay only if papers certifying *default* of the customer are presented. Such a letter differs from a guaranty in two major respects. First, as already suggested, the obligation of a guarantor is secondary while the obligation of an issuer is primary. That is, the obligation of a guarantor depends on the existence of a primary obligation on the part of the guarantor's principal running to the principal's "creditor". Thus the guarantor can set up defenses the principal has against the "creditor", but an issuer cannot, as we have seen, generally set up defenses the customer has against the beneficiary. Second, the obligation of a guarantor cannot mature unless the principal debtor has *actually defaulted.* But the *actual facts* are irrelevant to the general obligation of an issuer. An issuer's obligation arises when proper presentment of *documents* or other *papers* are made and these comply with the terms of the letter of credit.

J. White & R. Summers, *Uniform Commercial Code* § 18–2, at 713 (2d ed. 1984).

It is also stated that:

[T]he present-day commercial letter of credit is distinguishable from a contract of guaranty in that, under the former, the obligation of the issuer is not to pay if the customer does not, but to pay in the first instance; in other words, the issuer does not merely secure the promise or debt of another, but assumes an original, primary obligation.

It is fundamental that the letter-of-credit contract, unless express conditions are incorporated therein, be completely independent of both the credit agreement between the issuing bank and its customer and the contract of sale between the beneficiary and the customer.

50 Am.Jur.2d, *Letters of Credit, and Credit Cards,* § 5.

Thus concluding that the Bank was the primary obligor on the letter of credit the only remaining issue is whether it can be subrogated to GATX's security interest in Kaiser's collateral. To answer this question requires examination of Bankruptcy Code § 509 and the third equitable test.

■ Section 509(a) allows subrogation if the Bank was liable "with" Kaiser or "secured" its claim. Clearly, since we have seen the Bank was the primary obligor it was not liable "with" Kaiser. The Bank argues, however, that it "secured" GATX's claim within the meaning of § 509. No decisions have been found directly considering the meaning of the word "secured" in this context. The Bank's argument is that it means something more than pledging property to "secure" someone else's debt and should be given a broad, general dictionary meaning. Colliers, however, applies a more technical, commercial law, meaning to the term. It says the section applies "when an entity has secured a creditor of the debtor by using his own property as collateral without incurring any personal obligation." 3 *Collier on Bankruptcy* (MB) ¶ 509.02, at 509–4 (15th ed. 1979). The only reference in the legislative history supports this meaning. *See Report of the Commission on the Bankruptcy Laws of the United States,* H.R.Doc. No. 93–137, 93d Cong., 1st Sess., pt. II, p. 96. It thus appears that one "secures" a claim when it pledges property as collateral for another's debt without any personal obligation. Since the Bank did not pledge property and did undertake a personal obligation to GATX it is not subrogated under this provision.

Furthermore, the Bank fails to meet the third test of equitable subrogation which provides that it must not have been personally liable to GATX. The cases dealing with subrogation clearly stand for the proposition that since the issuer-bank has the primary obligation to pay it cannot be subrogated to rights of the creditor when it carries out that obligation. *See In re Munzenrieder Corporation,* 58 B.R. 228 (Bankr.M.D.Fla.1986); *In re Economic Enterprises, Inc.,* 44 B.R. 230 (Bankr.D.Conn. 1984) and *Overseas Trading Corporation v. Irving Trust Co.,* 82 N.Y.S.2d 72 (1948).

The simple fact is that when the Bank paid its *own* debt it cannot then step into the shoes of the party it paid to pursue that party's rights against a third party, absent an agreement of all the parties. The rule of subrogation says that "one who has been compelled to pay a debt that *ought to have been paid by another* is entitled to exercise all remedies which the creditor possessed against the other." *American Surety Co. v. Bethlehem National Bank,* 314 U.S. 314, 317, 62 S.Ct. 226, 228, 86 L.Ed. 241 (1941) (quoting Sheldon, *Subrogation* (2d ed.) § 11) (emphasis supplied). Here, by issuing a standby letter of credit, the Bank independently undertook to pay its own, separate, obligation and was not Kaiser's guarantor as the Bank's duty to pay GATX arose separately from Kaiser's independent obligation to also pay GATX.

For the foregoing reasons declaratory judgment will be entered disallowing the Bank's claim for subrogation and allowing it an unsecured claim for $3,250,000.