**In the Matter of AGROWNAUTICS, INC., dba Lakeville Brand Specialty Produce, Debtor.**

**Bankruptcy No. 2–89–00161.**

United States Bankruptcy Court, D. Connecticut.

March 15, 1991.

Neal Ossen, Hartford, Conn., for trustee-applicant.

Kevin J. Curley, Hartford, Conn., for J.H. Whitney & Co., claimant.

## MEMORANDUM RE: TRUSTEE'S APPLICATION TO DETERMINE PRIORITIES AND PAYMENT TO SECURED CREDITORS

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

#### Issue

The issue in this proceeding is whether to recognize asserted subrogation rights arising out of a letter of credit transaction. The appearing parties have submitted the matter upon a stipulation of facts and briefs.[1]

### II.

#### Facts

Agrownautics Inc., the debtor, had been the operator of a greenhouse facility in Washingtonville, Pennsylvania, used for hydroponic farming of produce (the facility). On February 10, 1989, the date of the filing of the debtor's bankruptcy petition, the facility was subject to three liens: a first lien in the original amount of $200,000 held by Commonwealth Bank and Trust Company (CBT); a second lien in the original amount of $300,000 held by the Pennsylvania Industrial Authority (PIDA); and a third lien in the original amount of $100,000 held by SEDA–Council of Governments (SEDA).

The debtor had assumed the PIDA obligation when it acquired the facility on or about July 30, 1986. PIDA, in addition to its lien on the facility, also became the beneficiary of an irrevocable standby letter of credit dated July 29, 1986 (LOC) in the amount of $341,909.70 issued by Chase Manhattan Bank (Chase). The LOC was payable from time to time in the event the debtor failed to make monthly installments when due on its lien obligation to PIDA. The LOC further provided that Chase would pay the entire lien balance, on request, during the period commencing July 1, 1989 and ending July 31, 1989. J.H. Whitney & Co. (Whitney) had executed the "Application" for the LOC as the "Applicant" and the Application described the debtor as the "Account Party." Under the provisions of the Application both the Applicant and the Account Party were responsible for reimbursing Chase on demand for monies drawn on the LOC. Whitney apparently is a major stockholder of the debtor.

Whitney filed a proof of claim (POC) on June 16, 1989 in the debtor's estate claiming to be both a secured and unsecured creditor of the debtor. The POC described the basis for the secured claim as the LOC issued by Chase and asserted that to the extent the LOC is drawn down, Chase immediately charges Whitney's account with Chase for such amount. The POC further stated that the LOC had already been drawn down to the extent of $9489.56 and was subject to a further draw down during July 1989. The POC then stated: "The claim consists of the amount paid, and the amount subject to payment, under the Letter of Credit and is deemed a secured claim by virtue of [Whitney's] right of subrogation to PIDA's position as a secured creditor."

On July 13, 1989, pursuant to the terms of the LOC, Chase paid PIDA $262,816.68, the balance of the debtor's obligation to PIDA. PIDA, on or about October 3, 1989, filed and recorded a release and satisfaction of its lien in the appropriate Pennsylvania office. Chase, upon making its payments to PIDA then charged Whitney's account at Chase with a like amount. Nei-

---

1. The pleading filed by the trustee commencing this proceeding is entitled "Application to Determine Priorities and Payment to Secured Credi- tors." In fact, the proceeding more properly is a trustee's objection to a filed proof of secured claim, under Bankruptcy Rule 3007.

ther Chase nor PIDA has filed a proof of claim in the debtor's estate.

The court, on or about January 30, 1990, on the application of Neal Ossen, trustee of the debtor's chapter 7 estate, approved both a contract of sale of the facility for the sum of $345,000, and a sale free and clear of any liens assertedly held by CBT, PIDA, SEDA and Whitney, with all liens to attach to the proceeds of the sale. No mention was made in the trustee's motion that the PIDA lien at that time had been paid and released of record. After the conclusion of the sale, the trustee paid CBT the sum of $211,865 in satisfaction of its lien. The trustee now makes the contention that Whitney is not entitled to assert rights of subrogation and that the remaining sale proceeds should be utilized to pay off SEDA's lien, approximating $70,000, with the estate's unsecured creditors sharing in the balance. Whitney argues that it is entitled to the balance of the sale proceeds because it is deemed subrogated to PIDA's secured position by virtue of it having paid Chase which had satisfied the debtor's obligation to PIDA.

### III.

#### Discussion

The Bankruptcy Code in § 509 provides:

*§ 509. Claims of codebtors.*

(a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

．　　　．　　　．　　　．　　　．

(c) The court shall subordinate to the claim of a creditor and for the benefit of such creditor an allowed claim, by way of subrogation under this section, or for reimbursement or contribution of an entity that is liable with the debtor on, or that has secured, such creditor's claim, until such creditor's claim is paid in full, either through payments under this title or otherwise.

The legislative history to § 509(a) states that "Subsection (a) subrogates the codebtor (whether a codebtor, surety, or guarantor) to the rights of the creditor to the extent of any payment made by the codebtor to the creditor." H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 358 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6314. Whitney contends that it is entitled to subrogation under § 509(a) because "the Letter of Credit Application constituted a guaranty by Whitney of Debtor's obligation to pay the PIDA loan and that the Letter of Credit constituted security for such guaranty." Whitney Memorandum at 6. Whitney additionally claims that it is entitled to subrogation of PIDA's rights under the common-law doctrine of equitable subrogation.

Whitney, placing itself in the shoes of Chase, relies on several bankruptcy court cases which hold that issuers of standby letters of credit are no different than guarantors and therefore may be subrogated to the rights of secured parties whose debts have been satisfied by such issuers. *In re National Service Lines, Inc.*, 80 B.R. 144 (Bankr.E.D.Mo.1987); *In re Sensor Systems, Inc.*, 79 B.R. 623 (Bankr.E.D.Pa. 1987); *In re Minnesota Kicks, Inc.*, 48 B.R. 93 (Bankr.D.Minn.1985). *See also, In re Valley Vue Joint Venture*, 123 B.R. 199 (Bankr.E.D.Va.1991).

*Sensor, National Service, Minnesota Kicks* and *Valley Vue*, represent one point of view. A greater number of other courts have, to date, rejected treating letters of credit issuers as guarantors and denied issuers the right to subrogation of lienholders' rights where they have not specifically bargained for such security. *In re Carley Capital Group*, 119 B.R. 646 (W.D.Wis. 1990); *Berliner Handels–Und Frankfurter Bank v. East Texas Steel Facilities, Inc. (In re East Texas Steel Facilities, Inc.)*, 117 B.R. 235 (Bankr.N.D.Tex.1990); *In re St. Clair Supply Co., Inc.*, 100 B.R. 263 (Bankr.W.D.Pa.1989); *Bank of America Nat'l Trust and Sav. Ass'n v. Kaiser Steel Corp. (In re Kaiser Steel Corp.)*, 89 B.R. 150 (Bankr.D.Colo.1988); *In re Munzenrieder Corp.*, 58 B.R. 228 (Bankr.M.D. Fla.1986); *Merchants Bank and Trust Co.*

*v. Economic Enterprises, Inc. (In re Economic Enterprises, Inc.),* 44 B.R. 230 (Bankr.D.Conn.1984) (Shiff, J.). These courts hold that a letter of credit transaction is fundamentally different from that of a guarantee transaction in that the letter of credit creates an absolute, primary liability. Issuers are neither codebtors nor parties that have secured a creditor's claim. As some of the above rulings point out, this conclusion finds support in the official comments to the Uniform Commercial Code, *see, e.g.,* U.C.C. §§ 5–103 official comment 3 ("The issuer is not a guarantor of the performance of these underlying transactions.") and 5–101 official comment ("The other source of law respecting letters of credit is the law of contracts with occasional unfortunate excursions into the law of guaranty."), and respected commentators, *see, e.g.,* J. White & R. Summers, *Uniform Commercial Code* § 19–3 at 814 (3rd. ed. 1988) ("But a true letter of credit arrangement is not a contract of guarantee; this is so even though the letter fulfills the function of a guarantee."). *But cf.,* Avidon, *Subrogation in the Letter of Credit Context,* 56 Brooklyn L.Rev. 129, 136 (1990) (in light of the strong argument that can be made either for or against subrogation, whether subrogation is allowed or denied is greatly influenced by the equities of the particular case).

I conclude that on the record Whitney is not entitled to any right of subrogation. Whitney entered into no obligation to pay the PIDA debt. Chase, who did have such obligation, chose not to bargain for the protection of the PIDA mortgage, presumably being content with the credit worthiness of Whitney. There is no equitable reason to grant Whitney protection which neither it nor Chase sought. The agreement between Whitney and Chase regarding the LOC was clearly captioned "Agreement (Standby and Performance) *[Unsecured]*" (emphasis added). *See, Carley Capital,* 119 B.R. at 650 (ruling that there is no justification for treating the applicant or customer for a letter of credit differently than the issuer of the letter of credit).

Whitney's alternate contention is that, in addition to the specific subrogation rights of § 509, it may assert a right under the common-law doctrine of equitable subrogation. *See, In re Spirtos,* 103 B.R. 240, 244 (Bankr.C.D.Cal.1989) (subrogation rights in bankruptcy are not limited to those described in § 509). The Supreme Court defines this doctrine in *American Surety Co. v. Bethlehem Nat'l Bank,* 314 U.S. 314, 317, 62 S.Ct. 226, 228, 86 L.Ed. 241 (1941): "Among the oldest ... doctrines is the rule of subrogation whereby 'one who has been compelled to pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other'." (citations omitted). Whitney's problem here is that the debt it paid was that of Chase which had no secured remedy. Whitney had no obligation to PIDA to pay any debt. Its obligation was to Chase, and Chase held no secured position. The doctrine of equitable subrogation does not provide Whitney, under the circumstances here, with any benefits beyond those contained in § 509. Finally, although not commented upon by the parties, PIDA, months before the sale ordered by the court, had already released its interest in the collateral, presumably freely, under no mistake, and under no obligation to assign its lien to anyone. No lien existed to which subrogation may be had.

## IV.

### Conclusion

The claim of Whitney that it is entitled to be subrogated to PIDA's former secured position is denied.