In re Thomas William SLAMANS,
Debtor.

CCF, INC., successor-in-interest to First
Capital Corporation, Appellant,

v.

FIRST NATIONAL BANK & TRUST
COMPANY OF OKMULGEE and Unit-
ed States of America, Appellees.

No. 93–C–0328–E.

United States District Court,
N.D. Oklahoma.

May 19, 1994.

Jared D. Giddens, Bryan J. Wells, Self,
Giddens & Lees, Inc., Lyle R. Nelson, Mitz-
ner & Nelson, Oklahoma City, OK, for appel-
lant.

Robert Inglish, Inglish & Inglish, Okmul-
gee, OK, for appellee.

J. Joseph Raymond, U.S. Dept. of Justice,
Tax Div., Washington, DC, for U.S.

J. Philip Adamson, Tulsa, OK, for debtor.

### ORDER

ELLISON, Chief Judge.

Now before the Court is an appeal by
CCF, Inc. of a decision by the United States
Bankruptcy Court for the Northern District
of Oklahoma. The Bankruptcy Court award-
ed Appellee First National Bank $111,053.41
under Section 509 of the Bankruptcy Code.
CCF now challenges that decision, contend-
ing the Bankruptcy Court erred, as a matter
of law, in awarding First National Bank the
money. However, for the reasons stated be-
low, this Court affirms the Bankruptcy Court
decision.

### I. Summary of Facts

Debtor Thomas William Slamans operated
gas stations. On December 4, 1990, Slamans
gave First Capital Corporation a revolving
credit note for $750,000. Appellant CCF,
Inc. ("CCF") is the successor-in-interest to
First Capital Corporation.

On December 20, 1994, Slamans entered
into a distribution agreement with Sun Com-
pany ("Sun") for the purchase of oil products.
Under the agreement, Slamans purchased
the oil products from Sun on credit and then
sold the products either for cash or by credit
card purchase. Credit card sales were first

sent to Sun, which would, in turn, reimburse Slamans if he was current on his account. The agreement required Slamans to obtain a letter of credit.

On February 6, 1991, Appellee First National Bank issued a standby letter of credit to Slamans in favor of Sun.[1] The letter provided that FNB agreed to pay Sun up to $200,000 if Slamans defaulted under the distributor agreement. The letter of credit was secured by a note, mortgage and security agreement covering Slamans' account receivables.

On February 28, 1992, Slamans filed bankruptcy. On March 9, 1992, Sun—because Slamans had not paid them—requested $192,433.15 from FNB pursuant to the letter of credit. On March 11, 1992, FNB paid Sun the money. Also, at that time, FNB demanded the $111,053.41 in proceeds from credit card sales in Sun's possession. Sun did not turn the money over to FNB; instead it filed an interpleader complaint with the Bankruptcy Court.

On December 16, 1992, the Bankruptcy Court found that FNB was entitled to the $111,053.41 pursuant to the "plain language" of Section 509 of the Bankruptcy Code, 148 B.R. 623. CCF appeals that decision.

## II. Legal Analysis

The dispute itself is straight-forward: Should FNB have received the $111,053.41 from Sun pursuant to 11 U.S.C. § 509 of the Bankruptcy Code?[2]  Section 509 states: "Except as provided in subsection (b) or (c) of this section, an entity that is *liable with* the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment."

No precise test is consistently used by courts when interpreting Section 509. The case law, however, indicates the following two-step analysis. First, does FNB—as an issuer of a letter of credit—*qualify* for subrogation under Section 509? In other words, is FNB "an entity that is liable with the debtor?" If FNB does qualify, the second question is whether Section 509 subrogation should be invoked. In this case, both questions are answered affirmatively.

### A. Does FNB Qualify For Subrogation Under 11 U.S.C. § 509?

The initial issue is whether FNB was *"liable with"* Slamans on the debt to Sun. Two divergent lines of authority address this issue. The first line, and what appears to be the majority position, is that only a party that is "secondarily liable", such as a guarantor, can be "liable with" the debtor under § 509. Issuers of letters of credit, such as FNB, do not fit into the Section 509 "liable with" language because they are primarily liable, according to this reasoning. The distinctions between a guarantor and letters of credit issuers are based, in part, on the legal characteristics of each. One court explains:

> **The key distinction between letters of credit and guarantees is that the issuer's obligation under a letter of credit is primary whereas a guarantor's obligation is secondary—the guarantor is only obligated to if the principal defaults on the debt the principal owes. In contrast, while the issuing bank in the letter of credit situation may be secondarily liable in the temporal sense, since its obligation to pay does not arise until after its customer fails to satisfy some obligation, it is satisfying its own absolute and primary obligation to make payment rather than satisfying an obligation of its customer. Having paid its own debt, as it has contractually undertaken to do, the issuer cannot then step into the shoes of the creditor to seek subrogation, reimbursement or contribution ... The only exception would be where the parties reach an agreement.**

1. A standby letter of credit is payable by the issuer upon presentation of documents establishing default by the debtor. See, generally, *Philadelphia Gear Corp. v. FDIC*, 751 F.2d 1131, 1135 (10th Cir.1984). In contrast, a commercial letter of credit is used in sales transactions and is payable by the issuer upon presentation of documents of title. *Id.*

2. The facts are not in dispute. Therefore, the question is whether the Bankruptcy Court erred as a matter of law. Such a review is *de novo*.

*Tudor Development Group, Inc. v. United States Fidelity & Guaranty, Co.*, 968 F.2d 357, 362 (3rd Cir.1992).

*Tudor* is a non-bankruptcy case, but several bankruptcy courts have applied the same reasoning. *In the Matter of Agrownautics, Inc.*, 125 B.R. 350 (Bankr.D.Conn.1991); *In re Carley Capital Group*, 119 B.R. 646 (W.D.Wis.1990) and *In re East Texas Steel Facilities, Inc.*, 117 B.R. 235 (Bankr. N.D.Tex.1990). These courts, in effect, conclude that a letter of credit issuer has a separate legal obligation (and remedy) than the debtor. This means they have a primary liability—not a secondary one. Guarantors, on the other hand, are only secondarily liable and, as a result, can obtain Section 509 subrogation. *In re Kaiser Steel Corporation*, 89 B.R. 150 (Bankr.D.Colo.1988).[3]

A second group of cases spurn the foregoing reasoning. *In re Minnesota Kicks, Inc.*, 48 B.R. 93 (Bankr.D.Minn.1985) and *In re Sensor Systems, Inc.*, 79 B.R. 623 (Bankr. E.D.Pa.1987). They conclude that, for the purposes of Section 509 subrogation, issuers of letters of credit and guarantors should both be eligible for subrogation. For example, the court in *Minnesota Kicks* states: "While a letter of credit may require conformity with certain obligations and formalities which are not required of a guarantee [and] where there is no contrary policy reason for treating them dissimilarly for other purposes, precluding the assertion of subrogation rights to issuers of standby letters of credit while allowing guarantors to assert them would be no more than an exercise in honoring form over substance." *Id.* at 104. The court in *In re Valley Vue Joint Venture*, 123 B.R. 199 (Bankr.E.D.Va.1991) meanwhile concluded that letter of credit issuers are *not* primarily liable:

> The *Kaiser* [supra] court correctly observed that an issuer's obligation to honor a standby letter of credit is considered a "primary" obligation. However, the *Kaiser* court failed to distinguish between the primary liability of a debtor to its creditor to repay a loan and the primary obligation of the issuer to its beneficiary to honor a letter of credit. When a standby credit supporting a loan is honored, the issuer admittedly is satisfying a debt for which a person other than the issuer is primary liable. This distinction, although not recognized by the ... *Kaiser* court is critical. An issuer is not primarily liable on the debt supported by its standby credit. *Id.* at 204.

In the instant case, the Bankruptcy Court declined to follow the *Kaiser, supra,* decision. Instead, the Bankruptcy Court found *Minnesota Kicks, supra,* more persuasive. Similar to *Minnesota Kicks*, the Bankruptcy Court concluded that guarantors and issuers of letter of credit ought to be treated alike under Section 509. *See, Memorandum Opinion*, 148 B.R. at page 626 (The provisions of § 509 do not draw a distinction between codebtors that are primarily or secondary liable with the debtor).[4] The Bankruptcy Court also relied on what it described as the "plain meaning" of Section 509:

> Section 509(a) applies to any entity that is *"liable with* the debtor on ... a claim of a creditor against the debtor" and who pays the claim. "Liable with" means that the parties are liable to the same creditor at the same time on same debt. The word "with" has been defined as "sometimes equivalent to the words 'in addition to.' " [quoting Black's Law Dictionary]. An issuer of a letter of credit is liable to a creditor under the terms of the letter of credit. The debtor is also liable to the creditor under a different agreement. Therefore, an issuer of a letter of credit is clearly liable with, or in addition to, the debtor on a claim. *Memorandum Opinion* at page 625.

---

3. The courts also rely, in part, on Article 5 of the Uniform Commercial Code. Article 5, in essence, makes clear that a letter of credit is not equivalent to a guarantee. For a explanation of this reasoning, see *Tudor,* supra, at pages 366–368. Also, see *Reconciling Standby Letters of Credit and the Principles of Subrogation in Section 509*, 7 Bank.Dev.J. 227 (1990).

4. By not drawing a distinction, the Bankruptcy Court did not adopt the *Valley Vue* analysis in toto.

■ The Bankruptcy Court's decision is contra to what appears to be the majority position. But, upon review, the Bankruptcy Court's decision that FNB is eligible for Section 509 subrogation is not in error for two reasons. First, there is a line of authority (albeit the minority position) that supports the Bankruptcy Court's holding.[5] Second, the undersigned rejects a rule that, in effect, states that, absent an agreement by the parties, an issuer of credit can *never* be eligible for Section 509 subrogation. Such a rule is too mechanical and rigid. *See, Valley Vue,* 123 B.R. at 203 ("**Subrogation is an equitable principle to be applied not in a mechanical fashion but rather as necessary to accomplish equitable results.**"). Therefore, issuers of letters of credit should be eligible for Section 509 subrogation.[6] *See, Tudor dissent,* 968 F.2d at 369 ("The issue is very close, but, on balance, I think the better rule is to retain subrogation on a case-by-case basis and apply it sparingly. When the unexpected happens, as it so often does, it is desirable to leave courts with equitable powers to avoid windfalls and to achieve a result to fair to all parties.")

### B. Did The Bankruptcy Court Err In Awarding FNB the $111,053.41?

■ Since FNB is eligible for subrogation, the next question is whether the circumstances of this case justify subrogation under Section 509. Adopting the analysis of *In re Kaiser Steel Corporation,* 89 B.R. 150 (Bankr.D.Colo.1988), the following five-part provides some guidance in that regard: (1) The codebtor must have made payment to protect its own interests; (2) the codebtor must have not been a volunteer; (3) the payment must satisfy a debt for which the codebtor was not primarily liable; (4) the entire debt must have been paid; and (5)

subrogation must not cause injustice to the rights of others. *In re Kaiser,* 89 B.R. at 151.

FNB satisfies elements 1, 2 and 4. It made payment to protect its interest. It was not a volunteer and it paid the entire debt. As to element 3, the Court adopts the reasoning set forth in *Valley Vue, supra,* that FNB is not primarily liable.

■ The only remaining discussion involves element 5. Does the Bankruptcy Court's decision to subrogate cause injustice to CCF? CCF certainly thinks so.[7] But this Court does not. Little question exists that CCF would like to recoup some of Slamans' debt. Yet, the Bankruptcy Court aptly noted that "**without the letter of credit there would be no account receivable owing from Sun Company to Debtor and therefore would be no fund available for the other claimants to make a claim against.**" *Memorandum Opinion* at page 626. Such reasoning is sound. Had FNB *not* honored the letter of credit, Sun would have kept the $111,053.41 and CCF would not have a claim to make. As it stands now, FNB is awarded the $111,053.41 and CCF is in virtually the same position it was had FNB not honored the letter of credit. As a result, no "injustice" has been done to CCF.

Furthermore, the specific facts of this case justify subordination. Of particular importance is that Sun *required* Slamans to obtain a letter of credit as part of the distribution agreement. In addition, FNB *honored* the letter of credit for $192,433.15 upon Sun's request and did so *after* the bankruptcy filing. It seems at odds with the principles of equity to, in effect, punish FNB for honoring the letter of credit. That would send a conflicting message to FNB or any other issuer,

**5.** No mandatory precedent guides the Court on this issue.

**6.** A noteworthy fact in this analysis is that Sun required Slamans to obtain a letter of credit as a part of the distribution agreement. The Court also finds that FNB, which honored the letter of credit, should prevail under Section 509 as a matter of equity.

**7.** Writes CCF: CCF's predecessor has taken its first priority security interest prior to FNB's issu-

ing the letter of credit. FNB was upon notice of the preexisting superior lien. FNB then voluntarily took a subordinate security interest in order to secure the reimbursement obligation of the Debtor. FNB now seeks to discard its contractual remedies and turn instead to the doctrine of subrogation in an attempt to prime CCF. CCF advanced $750,000 on the strength of its secured status and FNB would erode that status after the fact. *This is patently unjust.* Subrogation simply should not be permitted under these circumstances. *CCF Brief* at page 11.

which, in turn, could be commercially undesirable. *See, generally, Tudor Development Group*, 968 F.2d at 369 ("It is possible that if no equitable subrogation were permitted, fewer banks would issue such letters, which would be commercially undesirable.")

### III. Conclusion

Slamans obtained a letter of credit, at Sun's request, from FNB. Slamans filed bankruptcy, owing Sun $192,433.15. Sun drew upon the letter of credit for that amount, which FNB paid. FNB then requested that Sun turn over $111,053.41, which was owed to Slamans. The Bankruptcy Court subrogated FNB into Slamans' shoes, awarding the $111,053.41 under Section 509. That ruling was both equitably and legally well-founded, and, as a result, the Bankruptcy Court's decision is **AFFIRMED.**

SO ORDERED.