69 F.3d 468
 64 USLW 2335, 28 Bankr.Ct.Dec. 138, Bankr.
L. Rep. P 76,687,
27 UCC Rep.Serv.2d 1394
 In re Thomas William SLAMANS, also known as Tom W. Slamans,
doing business as Tom Slamans Distributor, Debtor.
CCF, INC., successor-in-interest to First Capital
Corporation, Appellant,
v.
FIRST NATIONAL BANK & TRUST COMPANY OF OKMULGEE and United
States of America, Appellees.
 No. 94-5135.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 2, 1995.
 
 Bryan J. Wells (Jared D. Giddens with him on the brief), of Self, Giddens & Lees, Oklahoma City, Oklahoma, for Appellant.
 Robert Inglish of Inglish & Inglish, Okmulgee, Oklahoma, for Appellee.
 Before BALDOCK, BRORBY, and LUCERO, Circuit Judges.
 BALDOCK, Circuit Judge.
 
 
 1
 Appellant CCF, Inc. ("CCF"), successor-in-interest to First Capital Corporation ("First Capital"), appeals the district court's order affirming the bankruptcy court's summary judgment in favor of Appellee First National Bank & Trust Company of Okmulgee, Oklahoma ("First National"). The bankruptcy court held that First National was eligible for subrogation under 11 U.S.C. Sec. 509(a). As creditors of Debtor Thomas William Slamans, CCF and First National each claim a superior interest in a fund owed Debtor. We have jurisdiction under 28 U.S.C. Sec. 158(d). We reverse.
 
 I.
 
 2
 The facts of this case are undisputed. Debtor operated gas stations. On December 4, 1990, First Capital loaned Debtor $750,000. In return, Debtor executed a revolving credit note and a security agreement granting First Capital a security interest in its accounts receivable. First Capital perfected its security interest in Debtor's accounts receivable by filing a financing statement on December 5, 1990. State of Oklahoma records reflect that First Capital holds a first priority perfected security interest in Debtor's accounts receivable.
 
 
 3
 On December 20, 1990, Debtor entered into a distributor agreement with Sun Company to purchase fuel for resale in Debtor's gas stations. As part of the agreement, Sun Company required Debtor to obtain a letter of credit. On February 6, 1991, First National issued an irrevocable standby letter of credit in favor of Sun Company in the amount of $200,000. The letter of credit provided that First National agreed to pay Sun Company for fuel that Debtor purchased under the distributor agreement. To secure its right to seek reimbursement from Debtor in the event Sun Company drew on the letter of credit, First National took a second priority security interest in Debtor's account receivables subordinate to First Capital's perfected security interest in the same collateral.
 
 
 4
 Under the distributor agreement with Sun Company, Debtor purchased fuel on credit and then resold it in Debtor's gas stations for cash or by credit card sales. Debtor sent the credit card charge slips to Sun Company who would in turn reimburse Debtor for the amount of the credit card purchases. If, however, Debtor owed Sun Company for fuel, the distributor agreement authorized Sun Company to setoff the amount it owed Debtor for credit card proceeds against the amount Debtor owed for fuel.
 
 
 5
 On February 28, 1992, Debtor filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code.[1] Because Debtor had failed to pay Sun Company for fuel purchased under the distributor agreement, on March 9, 1992 Sun Company drew upon the letter of credit issued by First National in the amount of $192,433.15. On March 11, 1992, First National honored the letter of credit and paid Sun Company $192,433.15. At that time, Sun Company owed Debtor $111,053.41 from proceeds collected from credit card charge slips. That same day, First National demanded that Sun Company turn over the $111,053.41 in credit card sales proceeds in its possession. Debtor disputed First National's right to the credit card proceeds and asserted that it was entitled to the $111,053.41 in Sun Company's possession.
 
 
 6
 Sun Company did not release the money to either party. Instead, Sun Company filed an interpleader complaint with the bankruptcy court on May 8, 1992 to determine who was entitled to the $111,053.41 in credit card proceeds. CCF appeared in the case as successor-in-interest to First Capital and asserted an interest in the money. CCF and First National filed cross motions for summary judgment, each contending they had a superior right to the credit card proceeds. CCF argued that as holder of a first priority perfected security interest in Debtor's accounts receivable, its interest in the credit card proceeds was superior to all other claimants. First National asserted that it was entitled to the $111,053.41 under 11 U.S.C. Sec. 509(a). Specifically, First National maintained that pursuant to Sec. 509(a) of the Bankruptcy Code, it was subrogated to Sun Company's right under the distributor agreement to setoff the credit card proceeds in its possession against the $192,433.15 Debtor owed Sun Company for fuel.
 
 
 7
 The bankruptcy court entered summary judgment in favor of First National finding "that under the plain language of Sec. 509(a), [First National] is entitled to be subrogated to the rights of Sun Company." Sun Company, Inc. v. Slamans (In re Slamans), 148 B.R. 623, 625 (Bankr.N.D.Okla.1992). The bankruptcy court concluded "[b]ecause [First National] is subrogated to the rights of Sun Company, it is entitled to the full amount of the $111,053.41 Sun Company owes Debtor. Consequently none of the other claimants are entitled to the fund." Id. at 626. On December 16, 1992, the bankruptcy court ordered Sun Company to pay the $111,053.41 to First National.
 
 
 8
 The district court affirmed the bankruptcy court's entry of summary judgment in favor of First National. CCF, Inc. v. First Nat'l Bank & Trust Co. of Okmulgee (In re Slamans), 175 B.R. 762, 765 (N.D.Okla.1994). The district court determined that because Debtor was liable to Sun Company under the distributor agreement, and First National was liable to Sun Company under the letter of credit, First National was "liable with" Debtor to Sun Company within the meaning of Sec. 509(a).[2] As a result, the district court determined that First National was subrogated to Sun Company's right under the distributor agreement. The district court therefore found that First National, pursuant to Sec. 509(a), was entitled to the $111,053.41 because it had an interest in the credit card proceeds superior to CCF's first priority perfected security interest. Id. In so doing, the district court recognized that its ruling "is contra to what appears to be the majority position.... [that] an issuer of credit can never be eligible for Section 509 subrogation." Id. This appeal followed.
 
 II.
 
 9
 CCF contends the district court erred in affirming the bankruptcy court's entry of summary judgment in favor of First National. CCF asserts that First National was not "liable with" Debtor on Sun Company's claim against Debtor for unpaid fuel under the distributor agreement because the obligations of Debtor and First National to Sun Company were wholly independent and separate. Specifically, CCF argues that First National's liability to Sun Company under the letter of credit was separate and distinct from Debtor's liability under the distributor agreement. Because First National and Debtor were separately liable to Sun Company, CCF contends First National was not "liable with the debtor" and therefore not eligible for subrogation under Sec. 509(a).
 
 
 10
 We review the district court's interpretation of a federal statute de novo. Eastern Inv. Corp. v. United States, 49 F.3d 651, 657 (10th Cir.1995). We review de novo the district court's affirmance of the bankruptcy court's entry of summary judgment using the same standards that governed the district court's review. Stat-Tech Int'l Corp. v. Delutes (In re Stat-Tech Int'l Corp.), 47 F.3d 1054, 1057 (10th Cir.1995). "Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id.[3]A.
 
 
 11
 CCF's argument on appeal requires us to interpret Sec. 509 of the Bankruptcy Code. "In statutory interpretation we look to the plain language of the statute and give effect to its meaning." Schusterman v. United States, 63 F.3d 986, 989 (10th Cir.1995) (citing United States v. Ron Pair Enter., Inc., 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989)). " 'Absent a clearly expressed legislative intention to the contrary, that language must be regarded as conclusive.' " Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 835, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990) (quoting Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). If the statute is clear, our inquiry ends. Schusterman, 63 F.3d at 989.
 
 
 12
 Section 509(a) of the Code governs subrogation in bankruptcy proceedings. Section 509(a) provides:
 
 Sec. 509. Claims of codebtors
 
 13
 (a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.
 
 
 14
 11 U.S.C. Sec. 509(a). Under the plain language of the Bankruptcy Code, an entity is subrogated to the rights of a creditor if it: (1) "is liable with the debtor on" (or has secured)[4]; (2) "a claim of a creditor against the debtor;" and (3) "pays such claim." Id. (emphasis added). The word "liable" means "[b]ound or obliged in law or equity." Black's Law Dictionary 824 (5th ed. 1979). The word "with" means "in addition to." Id. at 1436. Consequently, looking to the plain language of the statute and giving effect to its meaning, e.g., Schusterman, 63 F.3d at 989, "an entity ... is liable with the debtor," Sec. 509(a), when the entity is bound or obliged in law or equity in addition to the debtor on "a claim of a creditor against the debtor." Id.
 
 
 15
 Section 509(a) refers to the entity that is eligible for subrogation "as a 'codebtor,' but includes entities that are jointly or secondarily liable, such as a surety, guarantor, or comaker." 3 Collier on Bankruptcy p 509.01 (Lawrence P. King ed., 15th ed. 1995). "Section 509 is based on the premise that the only rights available to a surety, guarantor, or comaker are contribution, reimbursement, and subrogation." Id.
 
 B.
 
 16
 Turning to letter of credit principles, Oklahoma has adopted the Uniform Commercial Code ("UCC") provisions governing letters of credit. See Okla.Stat.Ann. tit. 12A, Secs. 5-101 to 5-117. The relevant Oklahoma UCC provision defines a letter of credit as "an engagement by a bank or other person made at the request of a customer ... that the issuer will honor drafts or other demands for payment upon compliance with the conditions specified in the credit." Id. Sec. 5-103(1)(a). There are two types of letters of credit: commercial and standby.
 
 
 17
 Standby letters of credit differ from commercial letters in some respects. The beneficiary of a commercial letter of credit may draw upon the letter simply by presenting the requisite documents showing that the beneficiary has performed and is entitled to the funds. A standby letter requires the production of documents showing that the customer has defaulted on its obligation to the beneficiary, which triggers the beneficiary's right to draw down on the letter.... No distinction is made in the UCC between commercial and standby letters of credit.
 
 
 18
 Tudor Dev. Group, Inc. v. United States Fidelity & Guar. Co., 968 F.2d 357, 360 (3d Cir.1992) (emphasis added). Although a standby letter of credit "is a kind of hybrid" between a commercial letter of credit and an ordinary guaranty, a standby letter of credit is not a guaranty. Federal Deposit Ins. Corp. v. Liberty Nat'l Bank & Trust Co., 806 F.2d 961, 968 (10th Cir.1986); accord Tudor Dev. Group, 968 F.2d at 360; Arbest Constr. Co. v. First Nat'l Bank & Trust Co., 777 F.2d 581, 585 (10th Cir.1985) (recognizing that standby letter of credit is "quite similar to a surety bond" but governed by statutory principles of Article Five of the UCC); James J. White & Robert S. Summers, Uniform Commercial Code Sec. 19-2, at 9 (3d ed. 1988) (noting that standby letter of credit "is not a contract of guaranty").
 
 
 19
 " 'The essential function of [a letter of credit] is to assure a party to an agreement that he will receive the benefits of his performance.' " Centrifugal Casting Mach. Co. v. American Bank & Trust Co., 966 F.2d 1348, 1350 n. 1 (10th Cir.1992) (quoting Wood v. R.R. Donnelley & Sons Co., 888 F.2d 313, 317 (3d Cir.1989)). The Oklahoma Supreme Court recently ruled in First State Bank v. Diamond Plastics Corp., 891 P.2d 1262, 1266 (Okla.1995), that "the Tenth Circuit properly construed the provisions of Article 5 of the Oklahoma version of the UCC" in Arbest. Consequently, we restate here a relevant portion of Arbest regarding letters of credit under Oklahoma law. Under the Oklahoma version of the UCC,
 
 
 20
 a letter of credit involves three parties: (1) an issuer (generally a bank) who agrees to pay conforming drafts presented under the letter of credit; (2) a bank customer or "account party" who orders the letter of credit and dictates its terms; and (3) a beneficiary to whom the letter of credit is issued, who can collect monies under the letter of credit by presenting drafts and making proper demand on the issuer.
 
 
 21
 Arbest, 777 F.2d at 583 (citing Okla.Stat.Ann. tit. 12A, Sec. 5-103(1)); accord First State Bank, 891 P.2d at 1266. "A letter of credit thus involves three legally distinct relationships, that 'between the issuer and the account party, the issuer and the beneficiary, and the account party and the beneficiary (this last relationship being the underlying business deal giving rise to the issuance of the letter of credit).' " Centrifugal Casting Mach. Co., 966 F.2d at 1351 (quoting Arbest, 777 F.2d at 583).
 
 
 22
 "Once the letter of credit is issued, the issuer becomes statutorily obligated to honor drafts drawn by the beneficiary that comply with the terms of the credit." First State Bank, 891 P.2d at 1267 (quotations omitted). Title 12A, Sec. 5-114(1) provides: "An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary." Okla.Stat.Ann. tit. 12A, Sec. 5-114(1) (emphasis added). As Professors White and Summers observe, the "bank's obligation to the beneficiary is independent of the beneficiary's performance on the underlying contract. Put another way, the issuer must pay on a proper demand from the beneficiary even though the beneficiary may have breached the underlying contract with the customer." White & Summers, supra, Sec. 19-2, at 8; see also Centrifugal Casting Mach. Co., 966 F.2d at 1352 ("[T]he issuer's obligation to pay on a letter of credit is completely independent from the underlying commercial transaction between the beneficiary and the account party."). "This has come to be known as the 'independence principle' because of the independence of the letter of credit from the underlying commercial transaction." First State Bank, 891 P.2d at 1267. Indeed, the independence principle is "the cornerstone of letter of credit law." Kellogg v. Blue Quail Energy, Inc. (In re Compton Corp.), 831 F.2d 586, 590 (5th Cir.1987). "The independence of the letter of credit from the underlying commercial transaction facilitates payment under the credit upon a mere facial examination of documents; it thus makes the letter of credit a unique commercial device which assures prompt payment." Ward Petroleum Corp. v. Federal Deposit Ins. Corp., 903 F.2d 1297, 1299 (10th Cir.1990). The framers of the UCC intended letters of credit to possess this special status. "It was one of the prime purposes of the drafters of Article Five to 'set an independent theoretical framework' for this device, a framework independent of contract, of guaranty, of third party beneficiary law, of the law of assignment, and of negotiable instruments." White & Summers, supra, Sec. 19-2, at 7.
 
 
 23
 An issuer who honors a beneficiary's demand for payment on a letter of credit is entitled to the remedy of reimbursement from the account party. "Unless otherwise agreed an issuer which has duly honored a draft or demand for payment is entitled to immediate reimbursement of any payment made under the credit...." Okla.Stat.Ann. tit. 12A, Sec. 5-114(3). However, "the issuer must honor a proper demand even though ... the insolvency of the account party renders reimbursement impossible." Centrifugal Casting Mach. Co., 966 F.2d at 1352; see also White & Summers, supra, Sec. 19-2, at 9 ("If ... the customer goes into bankruptcy after the letter has been issued, but before it has been drawn upon, the issuer must pay despite the fact that the customer will not be able to pay the issuer.").
 
 C.
 
 24
 Applying these principles to the instant case, First National issued a letter of credit to benefit Sun Company at Debtor's request. Under the Oklahoma version of Article Five of the UCC, Sun Company was the beneficiary, First National was the issuer of the letter of credit, and Debtor was the account party. See First State Bank, 891 P.2d at 1266. Settled letter of credit principles instruct that "[t]he three letter of credit relationships are legally distinct." Arbest, 777 F.2d at 583. As issuer of a letter of credit to Sun Company, First National became statutorily liable to Sun Company to "honor a draft or demand for payment which complies with the terms of the relevant credit regardless of ... [the] contract between the customer and the beneficiary." Okla.Stat.Ann. tit. 12A, Sec. 5-114(1).
 
 
 25
 Under the independence principle--"the cornerstone of letter of credit law," Kellogg, 831 F.2d at 590--First National's liability as issuer of the letter of credit to beneficiary Sun Company was distinct and separate from Debtor's liability to Sun Company under the distributor agreement. See, e.g., Centrifugal Casting Mach. Co., 966 F.2d at 1352 ("[T]he issuer's obligation to pay on a letter of credit is completely independent from the underlying commercial transaction between the beneficiary and account party."). In other words, First National and Debtor were separately liable to Sun Company. Debtor was not liable with First National on the letter of credit to Sun Company, nor was First National liable with Debtor on the distributor agreement.
 
 
 26
 Although subrogation under Sec. 509(a) of the Bankruptcy Code is clearly available to entities that are "liable with" the debtor such as sureties, guarantors, or comakers, e.g., 3 Collier on Bankruptcy p 509.01 (Lawrence P. King ed., 15th ed. 1995), the bankruptcy courts disagree whether an issuer of a letter of credit is eligible for Sec. 509 subrogation.[5] Under the plain language of Sec. 509(a) of the Bankruptcy Code, an entity is subrogated to the rights of a creditor if it "is liable with the debtor on ... a claim of a creditor against the debtor, and that pays such claim." 11 U.S.C. Sec. 509(a). First National's liability arose from the letter of credit, not from the distributor agreement between Debtor and Sun Company. Consequently, First National's independent obligation to honor Sun Company's demand for payment under the letter of credit did not render First National "liable with" Debtor on Sun Company's claim against Debtor under the distributor agreement within the meaning of Sec. 509(a).
 
 
 27
 Further, when First National honored Sun Company's demand for payment under the letter of credit, First National did not "pay[ ] such claim" "of a creditor against the debtor" within the meaning of Sec. 509(a). Specifically, First National did not pay Sun Company's claim against Debtor for unpaid fuel under the distributor agreement. Instead, First National fulfilled its own primary and independent obligation to honor Sun Company's demand for payment under the letter of credit. The district court, however, concluded that under the letter of credit, First National was liable with Debtor on Sun Company's claim against Debtor under the distributor agreement. We disagree. The district court's determination that an issuer of a letter of credit is liable with the account party on the beneficiary's claim against the account party on the underlying transaction subverts the fundamental essence of letter of credit law. See, e.g., Centrifugal Casting Mach. Co., 966 F.2d at 1352. Simply put, "[t]he error in this approach is that it violates the independence principle, which is the cornerstone of the commercial vitality of letters of credit." Ward Petroleum Corp., 903 F.2d at 1299. By honoring the letter of credit, First National was not "an entity that is liable with the debtor on ... a claim of a creditor against the debtor, and that pays such claim." Sec. 509(a).
 
 
 28
 Because First National did not satisfy the requirements of the plain language of the Bankruptcy Code, we hold First National was ineligible for subrogation under Sec. 509(a). The district court erred, therefore, by affirming the bankruptcy court's summary judgment ruling that First National was eligible to be subrogated to Sun Company's right to setoff the credit card proceeds under the distributor agreement because it was "liable with" Debtor under Sec. 509(a).[6]
 
 
 29
 We REVERSE the district court's order affirming the bankruptcy court's entry of summary judgment in favor of First National and REMAND to the district court with instructions to enter an order reversing the bankruptcy court's summary judgment ruling and remanding to the bankruptcy court for further proceedings.[7]
 
 
 
 [1]
 On June 5, 1995, an involuntary bankruptcy petition was filed against Tom Slamans, Inc. The bankruptcy court consolidated the individual case and the corporate case for purposes of the instant controversy
 
 
 [2]
 The district court also adopted the analysis of Bank of America Nat'l Trust and Sav. Ass'n v. Kaiser Steel Corp. (In re Kaiser Steel Corp.), 89 B.R. 150, 152 (Bankr.D.Colo.1988) and held that to be eligible for subrogation, First National had to satisfy both the plain language requirements of Sec. 509(a) and a five-part test derived from the equitable doctrine of subrogation. CCF, Inc., 175 B.R. at 765. The elements of the test are: "(1) [t]he codebtor must have made payment to protect its own interests; (2) the codebtor must have not been a volunteer; (3) the payment must satisfy a debt for which the codebtor was not primarily liable; (4) the entire debt must have been paid; and (5) subrogation must not cause injustice to the rights of others." Id. The district court ruled that First National was eligible for subrogation under Sec. 509(a) because it satisfied the requirements of Sec. 509(a) and the equitable subrogation test
 There is a split of authority whether subrogation in bankruptcy court is governed exclusively by Sec. 509, or whether the entity seeking subrogation under Sec. 509 must also satisfy the five-part equitable subrogation test. See Photo Mechanical Servs., Inc. v. E.I. Dupont De Nemours & Co., Inc. (In re Photo Mechanical Servs., Inc.), 179 B.R. 604, 618-19 (Bankr.D.Minn.1995) (collecting cases). We need not determine whether the district court correctly concluded that First National must satisfy the five-part equitable test in addition to the requirements of Sec. 509 because we conclude that First National does not qualify for subrogation under the plain language of Sec. 509(a). See infra, part III.C.
 
 
 [3]
 Fed.R.Bankr.P. 7056 governs summary judgment in bankruptcy court and provides, "Rule 56 of the F.R.Civ.P. applies in adversary proceedings." Fed.R.Bankr.P. 7056. The summary judgment standard in bankruptcy court is therefore identical to the summary judgment standard in the district court under Fed.R.Civ.P. 56. See Stat-Tech Int'l Corp., 47 F.3d at 1057 n. 1; 9 Collier on Bankruptcy p 7056.03 (Lawrence P. King ed., 15th ed. 1995)
 
 
 [4]
 First National does not contend that it "has secured" Sun Company's claim against Debtor for unpaid fuel under the distributor agreement within the meaning of Sec. 509(a)
 
 
 [5]
 Compare Beach v. First Union Nat'l Bank of North Carolina (In re Carley Capital Group), 119 B.R. 646, 648 (W.D.Wis.1990) (holding that issuer of letter of credit was not eligible for subrogation under Sec. 509(a) because it was not "liable with" the debtor but was independently liable to creditor) and In the Matter of Agrownautics, Inc., 125 B.R. 350, 353 (Bankr.D.Conn.1991) (concluding that issuer of letter of credit is not entitled to subrogation under Sec. 509(a) because "[i]ssuers are neither codebtors nor parties that have secured a creditor's claim") and Berliner Handels-Und Frankfurter Bank v. East Texas Steel Facilities, Inc. (In re East Texas Steel Facilities, Inc.), 117 B.R. 235, 240 (Bankr.N.D.Tex.1990) (holding that an issuer of a letter of credit may not be subrogated under Sec. 509(a) because the issuer was not an entity "liable with" the debtor on a claim of a creditor against the debtor) and Bank of America Nat'l Trust and Savings Ass'n v. Kaiser Steel Corp. (In re Kaiser Steel Corp.), 89 B.R. 150, 154 (Bankr.D.Colo.1988) (holding that issuer of letter of credit was not entitled to Sec. 509(a) subrogation because it "was the primary obligor [and therefore] was not liable 'with' [the debtor]") with In re Valley Vue Joint Venture, 123 B.R. 199, 204 (Bankr.E.D.Va.1991) ("We reject the Kaiser analysis and hold that where a standby letter of credit is used to support a loan from a beneficiary to the debtor, a confirming bank, by honoring the credit and thereby reducing the debtor's obligation to the beneficiary is 'an entity ... liable with the debtor' ... under 11 U.S.C. Sec. 509(a) and has satisfied a debt for which it is not primarily liable under general equitable principles of subrogation.") and In re Sensor Systems, Inc., 79 B.R. 623, 626 (Bankr.E.D.Pa.1987) ("[A] party issuing a letter of credit in favor of another is logically characterized as a 'guarantor' or 'codebtor' [and] ... [t]herefore ... clearly within the scope of application of Sec. 509(a)....)" and In re Minnesota Kicks, Inc., 48 B.R. 93, 104-05 (Bankr.D.Minn.1985) ("[P]recluding the assertion of subrogation rights to issuers of standby letters of credit while allowing guarantors to assert them would be no more than an exercise in honoring form over substance.")
 
 
 [6]
 Our holding that First National is ineligible for subrogation under Sec. 509(a) does not leave First National without a remedy. As an issuer of a letter of credit, First National has a statutory right to reimbursement from Debtor. See Okla.Stat.Ann. tit. 12A, Sec. 5-114(3). We note that First National secured its right to reimbursement from Debtor by perfecting a second priority security interest in Debtor's account receivables
 
 
 [7]
 As of the date of this opinion, the National Conference of Commissioners on Uniform State Laws and the American Law Institute have prepared a comprehensive revision to Article Five of the UCC that has not yet been adopted by any state. Section 5-117 of the revised Article Five grants issuers of letters of credit the remedy of subrogation. Section 5-117 provides in relevant part:
 (a) An issuer that honors a beneficiary's presentation is subrogated to the rights of the beneficiary to the same extent as if the issuer were a secondary obligor of the underlying obligation owed to the beneficiary and of the applicant to the same extent as if the issuer were the secondary obligor of the underlying obligation owed to the applicant.
 U.C.C. Sec. 5-117 (Proposed Official Draft 1995), reprinted in 3 James J. White & Robert S. Summers, Uniform Commercial Code Sec. 26-15, at 213 (4th ed. 1995). Although the revised Article Five provides an issuer with the remedy of subrogation, the UCC does not determine the availability of subrogation in a bankruptcy proceeding. Rather, Sec. 509 of the Bankruptcy Code governs an entity's eligibility for subrogation in a bankruptcy proceeding. Thus, the effect of the revised Sec. 5-117 on Sec. 509 subrogation is presently undecided, and suitable for resolution by a future court.